UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE on behalf of BABY DOE, a minor, and PATRICIA CAVALLARO-KEARINS, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>    v.<br><br><br>ANTHEM HEALTHCHOICE ASSURANCE, INC., d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD, and d/b/a ANTHEM BLUE CROSS, and ANTHEM HP, LLC, d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD HP, and d/b/a ANTHEM BLUE CROSS HP,<br><br>               Defendant. | Civil Action No. 1:24-cv-08012 |

## **DEFENDANT ANTHEM HEALTHCHOICE ASSURANCE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Matthew J. Aaronson
TROUTMAN PEPPER LOCKE LLP
875 Third Avenue
New York, NY 10022
T: (212) 704-6000
matthew.aaronson@troutman.com

Adam Feinberg (admitted *pro hac vice*)
MILLER & CHEVALIER
CHARTERED
900 16th Street NW
Washington, DC 20006
T: (202) 626-6087
afeinberg@milchev.com

*Attorneys for Defendant*
*Anthem HealthChoice Assurance, Inc.*

Date: March 28, 2025
New York, New York

# TABLE OF CONTENTS

I.     PLAINTIFFS' STATE LAW CLAIMS ARE EXPRESSLY PREEMPTED BY FEHBA .................................................................................. 8

       A.     The Text and Purpose of FEHBA's Preemption Provision .................................. 9

       B.     The Requirements for Express Preemption Are Met Here .................................. 10

II.    PLAINTIFF'S CLAIMS ARE IMPLIEDLY PREEMPTED BY FEHBA ..................... 13

III.   PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS FAILED TO UTILIZE AVAILABLE ADMINISTRATIVE REMEDIES..................... 16

IV.    PLAINTIFFS CANNOT SUE AS THIRD-PARTY BENEFICIARIES......................... 20

V.     PLAINTIFFS CONCEDE THAT BENEFIT-OF-THE BARGAIN DAMAGES ARE UNAVAILABLE TO THEM .................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila,*
542 U.S. 200 (2004)...................................................................................18, 19

*Alpino v. JPMorgan Chase Bank, N.A.,*
No. 10-12040, 2011 U.S. Dist. LEXIS 43210 (D. Mass. Apr. 21, 2011) ..............................22

*Astra USA, Inc. v. Santa Clara Cnty.,*
563 U.S. 110 (2011).........................................................................................21

*In re Bear Stearns Cos., Inc. Secs., Derivatives, & ERISA Litig.,*
763 F. Supp. 2d 423 (S.D.N.Y. 2011)..........................................................................4

*Botsford v. Blue Cross & Blue Shield of Mont., Inc.,*
314 F.3d 390 (9th Cir. 2002), *opinion amended on denial of rehearing*, 319
F.3d 1078 (9th Cir. 2003) ............................................................................16, 17, 19

*Bridges v. Blue Cross & Blue Shield Ass'n,*
935 F. Supp. 37 (D.D.C. 1996)..................................................................7, 14, 16

*Bryan v. OPM,*
165 F.3d 1315 (10th Cir. 1999) ...........................................................................12

*Burkey v. Gov't Emps. Hosp. Ass'n,*
983 F.2d 656 (5th Cir. 1993) ................................................................................9

*Cade v. BAC Home Loans Servicing, LP,*
No. 10-CV-4224, 2011 WL 2470733 (S.D. Tex. June 20, 2011).............................................22

*Caltex Plastics, Inc. v. Lockheed Martin Corp.,*
824 F.3d 1156 (9th Cir. 2016).............................................................................22

*Cent. Sw. Tex. Dev., L.L.C. v. JPMorgan Chase Bank, N.A.,*
780 F.3d 296 (5th Cir. 2015) ...............................................................................21

*Cicio v. Vytra Healthcare,*
208 F. Supp. 2d 288 (E.D.N.Y. 2001) .....................................................................17

*Cicio v. Vytra Healthcare,*
321 F.3d 83 (2d Cir. 2003), *vacated on other grounds*, 542 U.S. 933 (2004)........................17

*Coventry Health Care of Mo., Inc. v. Nevils,*
581 U.S. 87 (2017)........................................................................................10, 12

*Empire HealthChoice Assurance, Inc. v. McVeigh*,
  547 U.S. 677 (2006) ..................................................................................................... *passim*

*Fero v. Excellus Health Plan, Inc.*,
  236 F. Supp. 3d 735 (W.D.N.Y. 2017) ......................................................................21, 22, 23

*Goel v. Bunge, Ltd.*,
  820 F.3d 554 (2d Cir. 2016) ...........................................................................................4

*Gonzalez v. Blue Cross Blue Shield Ass'n*,
  62 F.4th 891 (5th Cir. 2023) ..........................................................................3, 7, 12, 13

*Hamdan v. Rumsfeld*,
  548 U.S. 557 (2006) ......................................................................................................23

*Hayes v. Prudential Ins. Co.*,
  819 F.2d 921 (9th Cir. 1987) .........................................................................................12

*Health Care Serv. Corp. v. Methodist Hosps. of Dallas*,
  814 F.3d 242 (5th Cir. 2016) ...........................................................................................4

*Helfrich v. Blue Cross and Blue Shield Ass'n*,
  804 F.3d 1090 (10th Cir. 2015) ....................................................................................16

*Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, N.A.*,
  747 F.3d 44 (2d Cir. 2014) ............................................................................................21

*Levy ex rel. Immunogen Inc. v. Southbrook Int'l Invs., Ltd.*,
  263 F.3d 10 (2d Cir. 2001) ..............................................................................................4

*Jacks v. Meridian Res. Co.*,
  701 F.3d 1224 (8th Cir. 2012) .......................................................................................15

*Jamie F. v. UnitedHealthCare Ins. Co.*,
  No. 19-CV-1111-YGR, 2020 WL 6802416 (N.D. Cal. Nov. 19, 2020) .................................19

*JP Morgan Chase & Co. v. Conegie ex rel. Lee*,
  492 F.3d 596 (5th Cir. 2007) .........................................................................................21

*Kaiser Foundation Health Plan, Inc. v. Maylone*,
  No. 55585-9-II, 2022 WL 3754902 (Wash. Ct. App. Aug. 30, 2022) ...................................12

*Kennedy v. Empire Blue Cross & Blue Shield*,
  989 F.2d 588 (2d Cir. 1993) ..........................................................................................20

*Kight v. Kaiser Found. Health Plans of Mid-Atl. States, Inc.*,
  34 F. Supp. 2d 334 (E.D. Va. 1999) ..........................................................................14, 17

*Kobleur v. Grp. Hospitalization & Med. Servs., Inc.*,
   954 F.2d 705 (11th Cir. 1992) ...................................................................20

*Mahajan v. Blue Cross Blue Shield Ass'n*,
   No. 16-cv-6944, 2017 WL 4250514 (S.D.N.Y. Sept. 22, 2017) ..................................... *passim*

*Metro. Life Ins. Co. v. Christ*,
   979 F.2d 575 (7th Cir. 1992) ...................................................................13

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992)...........................................................................13

*Muratore v. OPM*,
   222 F.3d 918 (11th Cir. 2000) ................................................................3, 15

*Nguyen v. United States Catholic Conf.*,
   719 F.2d 52 (3d Cir. 1983)....................................................................22

*Ray v. Tabriz*,
   No. 23-cv-1467, 2025 WL 306175 (N.D. Ill. Jan. 27, 2025).....................................12

*Rivera v. Bank of Am. Home Loans*,
   No. 09 CV 2450, 2011 U.S. Dist. LEXIS 43138 (E.D.N.Y. Apr. 21, 2011) ..........................21

*Robert O. v. Harvard Pilgrim Health Care, Inc.*,
   No. 2:17-CV-1251-TC, 2019 WL 3358706 (D. Utah July 25, 2019)..................................19

*Russell v. Gennari*,
   No. 1:07cv793, 2007 WL 3389998 (E.D. Va. Nov. 8, 2007), *aff'd*, 284 F.
   App'x 98 (4th Cir. 2008) ......................................................................13

*Russello v. United States*,
   464 U.S. 16 (1983)...........................................................................23

*Skillman-Eastridge, Ltd. v. JPMorgan Chase Bank, Nat. Ass'n*,
   No. 3:09-CV-01988-M, 2011 WL 4528391 (N.D. Tex. Sept. 29, 2011) ..............................22

*In re Trib. Co. Fraudulent Conv. Litig.*,
   946 F.3d 66 (2d Cir. 2019)....................................................................14

**Statutes**

5 U.S.C. § 8901 ...............................................................................3

5 U.S.C. § 8902................................................................3, 4, 7, 9, 10, 11, 14, 15, 16

5 U.S.C. § 8903 ...............................................................................3

5 U.S.C. § 8907...............................................................................4

5 U.S.C. § 8910 .................................................................................................................4, 14

5 U.S.C. § 8913 .............................................................................................................3, 4, 14

5 U.S.C. §§ 8901–8914 ....................................................................................................passim

29 U.S.C. § 1132 ....................................................................................................................18

42 U.S.C. § 300gg-115 .............................................................................................................6

Mont. Code Ann. § 33-18-201 ...............................................................................................17

N.Y. Gen. Bus. Law § 349 .................................................................................................8, 13

N.Y. Gen. Bus. Law § 350 .................................................................................................8, 13

N.Y. Ins. Law § 4226 ........................................................................................................8, 11

## Other Authorities

5 C.F.R. § 890.105 ............................................................................7, 16, 18, 19, 20

5 C.F.R. § 890.107 ....................................................................................7, 16, 19, 20

48 C.F.R. § 1600 *et seq.* ........................................................................................14

48 C.F.R. § 1609.7001 ............................................................................................4

48 C.F.R. § 1652.203-70 ...................................................................................4, 5, 14

48 C.F.R. § 1652.222-70 ......................................................................................4, 5

48 C.F.R. § 1652.246-70 .........................................................................................4

Fed. R. Civ. P. 12 ..................................................................................................1

H.R. Rep. No. 105-374 (1997) ................................................................................9

Restatement (Second) of Contracts § 302 (Am. Law Inst. 1981) ...............................21

S. Rep. No. 95-903 (1978) ...............................................................................9, 10

Defendant, Anthem HealthChoice Assurance, Inc. ("Anthem")[1], through its undersigned counsel, submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint (ECF No. 1) ("Complaint" or "Compl.") filed by "Jane Doe" on behalf of her child "Baby Doe," a minor, and Patricia Cavallaro-Kearins (collectively, "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Plaintiffs are enrollees in the Service Benefit Plan (the "Plan"), a health insurance plan for federal employees, retirees, and their families, which is governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901–8914. The Plan is created by a federal government contract between the U.S. Office of Personnel Management ("OPM") and the Blue Cross and Blue Shield Association ("BCBSA"), the latter of which enters into the contract as agent for and on behalf of Anthem and other local Blue Cross and Blue Shield companies that administer the Plan in their individual localities. Anthem administers the Plan in parts of New York.

Plaintiffs allege that Anthem's provider directory for the Plan is inaccurate, thwarting Plaintiffs' efforts to obtain mental health coverage under the Plan and causing them to pay higher "out-of-network" rates for their mental health care, instead of the lower "in-network" rate they thought they would receive under the Plan. Plaintiffs bring various state law claims focusing on these supposed misrepresentations in the Plan's provider directory, and a breach-of-contract claim as purported third-party beneficiaries of the contract between OPM and BCBSA.

Plaintiffs' claims—all brought under state law—must be dismissed with prejudice because they are fundamentally inconsistent with FEHBA and the regulations and contracts thereunder.

---

[1] Anthem HP, LLC, d/b/a Anthem Blue Cross And Blue Shield HP, and d/b/a Anthem Blue Cross HP was voluntarily dismissed from the action on January 23, 2025 (ECF No. 15).

FEHBA includes a broad preemption provision, 5 U.S.C. § 8902(m)(1), under which the terms of OPM's contracts with carriers like BCBSA expressly preempt state law. Additionally, Congress gave OPM broad authority over FEHBA carriers and plans, including the authority to police the conduct of FEHBA carriers. OPM has exercised that authority by adopting regulatory and contractual provisions giving OPM enforcement authority over FEHBA carriers' marketing materials and other Plan literature. Congress's grant of broad supervisory and enforcement authority to OPM thus also implicitly preempts state law claims that would interfere with OPM's exercise of this authority.

Congress also assigned to OPM the authority to make benefits determinations in individual cases and, pursuant to that authority, OPM has created a mandatory administrative remedy for Plan enrollees who believe they were improperly denied benefits. That remedy requires exhaustion of administrative review before filing suit and allows for suits against OPM only, expressly disallowing suits against FEHBA administrators such as Anthem.

Plaintiffs' claims as Plan enrollees, if permitted to proceed, would violate FEHBA and OPM's related authority. Indeed, courts have repeatedly concluded in highly analogous decisions that dismissal is required in these circumstances. As detailed below, all of Plaintiffs' claims must be dismissed with prejudice for three independent reasons: (1) Plaintiffs' state law claims are expressly preempted by FEHBA, (2) those claims are also implicitly preempted by FEHBA, and (3) Plaintiffs failed to exhaust available administrative remedies. In addition, the third-party breach of contract claim must be dismissed because Plaintiffs are not intended third-party beneficiaries with the right to sue; OPM is the only one with the right to enforce the contract against Anthem. Finally, to the extent any portion of Plaintiffs' claims survive this motion, Plaintiffs concede they cannot pursue benefit-of-the-bargain damages for their claims.

# BACKGROUND

### A.    Statutory, Regulatory, and Contractual Background Regarding FEHBA and the Service Benefit Plan

*FEHBA*.  In 1959, Congress enacted FEHBA to create "a comprehensive program of health insurance for federal employees."  *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 682 (2006).  To accomplish that goal, Congress vested "significant authority" in OPM. *Muratore v. OPM*, 222 F.3d 918, 920 (11th Cir. 2000).  That includes broad discretion for OPM to establish insurance plans with many different insurers, which are known under FEHBA as "carriers."  *See* 5 U.S.C. §§ 8901(7), 8902–03, 8913.

*The Service Benefit Plan*.  One such plan is the nationwide Service Benefit Plan.  *See* 5 U.S.C. § 8903(1).  The Plan is formed, pursuant to FEHBA, by federal government contract No. CS 1039, between OPM and BCBSA (the "OPM-BCBSA Contract");[2] 2024 Statement of Benefits for the Service Benefit Plan at 4 (Ex. O to Stuhan Decl.) [hereinafter, "2024 Statement of Benefits"].[3]  "OPM's contract with [BCBSA] describes the benefits that employees are eligible for, and on what terms." *Gonzalez v. Blue Cross Blue Shield Ass'n,* 62 F.4th 891, 896 (5th Cir. 2023).  BCBSA is the carrier of the Plan, and contracts on behalf of local participating Blue Cross and Blue Shield companies ("BCBS Companies") that administer the Plan in their respective

---

[2] Periodically, the OPM-BCBSA Contract is restated in full.  Stuhan Decl. ¶ 5.  In other years, OPM and BCBSA enter into amendments to the most recent version of the contract.  *Id*. ¶ 6.  The relevant provisions upon which Anthem relies for purposes of this motion are substantively unchanged between the versions of the OPM-BCBSA Contract in effect during the relevant period, and appear in the same numbered sections of the contract.  Attached to the Stuhan Declaration are the versions of the OPM-BCBSA Contract or applicable annual amendments that were operative during the period of 2018 through 2024 in which Plaintiffs allege their claims arose.  *See* Exs. A through H to Stuhan Decl. (2013 and 2023 Contract and 2018-2021 and 2023-2024 Amendments).

[3] The prior versions of the Statement of Benefits for 2018 through 2023 are also attached to the Stuhan Decl. as Exhibits I through N.

localities. OPM-BCBSA Contract § 4.3; *Health Care Serv. Corp. v. Methodist Hosps. of Dallas*, 814 F.3d 242, 247 (5th Cir. 2016). Anthem is a BCBS Company that administers the Plan in parts of New York.[4]

*OPM's Authority*. Congress vested OPM with broad authority to police FEHBA carriers, *see, e.g.*, 5 U.S.C. §§ 8902(e), 8910(b), 8913(a), and OPM has adopted extensive regulations to that effect, *see, e.g.*, 48 C.F.R. §§ 1609.7001, 1652.203-70, 1652.222-70, 1652.246-70. Consistent with these provisions, the OPM-BCBSA Contract expressly gives OPM authority to evaluate Anthem's work under the contract and to take enforcement action against Anthem to protect the interests of federal enrollees. *E.g.*, OPM-BCBSA Contract §§ 1.9, 1.10, 1.11, 1.12, 1.14.

Congress also vested OPM with sole authority to contract for the provision of FEHBA health plans, to determine the benefit structure of each plan, and to promulgate the official description of a plan's terms in a Statement of Benefits, which is sometimes referred to as a "Brochure." *See* 5 U.S.C. §§ 8902(a), (d), 8907. The Statement of Benefits is "[a]uthorized for distribution by" OPM and is incorporated into the government contract between OPM and BCBSA. *See* 2024 Statement of Benefits cover page; § 2.2(a); *Empire*, 547 U.S. at 684. Under the contract's terms, FEHBA carriers "shall provide the benefits as described in the agreed upon

---

[4] The OPM-BCBSA Contract and Statement of Benefits (and other documents) are properly considered by the Court on this motion to dismiss. The Complaint repeatedly references and relies on the OPM-BCBSA Contract and the incorporated Statement of Benefits. *E.g.*, Compl. ¶¶ 71, 84, 117–18, 152–54, 170, 240, 253, 229, 262–63, 269. The Court may consider those documents because they are "integral to the complaint and [are] specifically referenced in th[e] pleading." *In re Bear Stearns Cos., Inc. Secs., Derivatives, & ERISA Litig.*, 763 F. Supp. 2d 423, 565 (S.D.N.Y. 2011) (citation omitted); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 558–59 (2d Cir. 2016); *Levy ex rel. Immunogen Inc. v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 13 n.4 (2d Cir. 2001). Separately, the Statement of Benefits is available on OPM's official government website: https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plans/pdf/2024/brochures/71-005.pdf (last visited Mar. 28, 2025), and thus is a matter of public record of which the Court can take judicial notice.

-4-

brochure text." OPM-BCBSA Contract § 2.2(a). And such carriers must also "produce and make available an FEHB Summary of Benefits and Coverage (SBC)." *Id*. § 1.13(e).

The contract requires the "verbatim" use of the OPM-approved Statement of Benefits and requires FEHBA carriers' marketing materials, supplemental literature, and other materials— including the SBC—to "be truthful and not misleading" and to meet other requirements set forth in OPM's regulations or other guidance. *Id*. § 1.13(b), (c), 1.14(a), (b). If a FEHBA carrier violates those duties, the contract gives OPM the power to direct the carrier to take corrective actions "to protect the interests of Federal Members." *Id*. § 1.13(d), 1.14(c), (d). Those corrective actions include cease-and-desist orders, orders to reissue nonconforming materials, orders to provide corrective notices to enrollees, allowing enrollees to transfer to another plan, and termination of the Plan. *Id*. Most of OPM's contractual rights are also mandated by regulation. 48 C.F.R. § 1652.203-70.

*The Plan's Preferred and Participating Provider Network*. The Plan offers a "Preferred Provider Organization," which is a network of "certain hospitals and other healthcare providers" that have been designated as "Preferred" providers or "PPO" providers and with whom Anthem (or another BCBS Company) contracts. *E.g.*, 2024 Statement of Benefits at 12; *see also* Compl. ¶ 104. In addition, the Plan also offers "Participating" providers, which are not Preferred providers but other providers contracted with Anthem (or another BCBS Company). *Id*. Anthem must notify OPM when a provider contract is added or terminated. OPM-BCBSA Contract § 1.10(a)(4); 48 C.F.R. § 1652.222-70.

The Plan pays Preferred providers and Participating providers at negotiated rates. *E.g., id*. at 12, 29–31, 156–58. Plaintiffs refer to such providers as "in-network." *E.g.*, Compl. ¶ 104. Because there is no limit to what out-of-network providers (*i.e.*, providers that are neither Preferred

nor Participating) can charge, enrollees typically pay more in cost-sharing (*e.g.*, coinsurance, copayments, and deductibles) if they use such providers. 2024 Statement of Benefits at 13, 29–31, 157; Compl. ¶¶ 105-09, 116.

The Plan's Mental Health Coverage.  The Statement of Benefits describes the Plan's mental health coverage, including the amounts the Plan will pay for in-network and out-of-network providers. 2024 Statement of Benefits at 93–97. The Statement of Benefits also contains a link where enrollees can locate Preferred providers. *Id*. at 94. That link takes the user to the "Find a Doctor" website referenced in the Complaint. Compl. ¶ 71 & n.61.

The OPM-BCBSA Contract's Incorporation of the No Surprises Act.  OPM requires FEHBA contractors, including Anthem, to comply with certain provisions of the No Surprises Act ("NSA"), including a provision of the NSA designed to ensure that health plans' provider directory information is accurate.[5] OPM-BCBSA Contract § 2.18(a); Compl. ¶ 119; 42 U.S.C. § 300gg-115 (PHSA § 2799A-5).[6] That NSA provision requires a health plan issuer to maintain accurate provider directory information. 42 U.S.C. § 300gg-115(a).

If a health plan's provider directory mistakenly lists a provider as in-network, the plan cannot impose on an enrollee who receives the inaccurate information a cost-sharing amount that is higher than the amount that would have applied had the provider actually been in-network. 42 U.S.C. § 300gg-115(b).

---

[5] By its terms, the NSA does not apply to FEHBA plans, as those provisions apply only to a "group health plan" or a "health insurance issuer offering group or individual health insurance coverage." *See, e.g.*, 42 U.S.C. § 300gg–115(a)(1).

[6] The NSA added nearly identical provisions to three statutes: the Public Health Service Act ("PHSA"), the Employee Retirement Income Security Act ("ERISA"), and the Internal Revenue Code. For simplicity, we cite to the PHSA provisions, which are found in Title 42 of the U.S. Code.

*FEHBA's Administrative Remedies*.  Under FEHBA, each health plan contract requires the carrier "to pay for or provide a health service or supply in an individual case" if OPM "finds that the employee . . . is entitled thereto under the terms of the contract."  5 U.S.C. § 8902(j).  OPM has implemented this provision by establishing a mandatory administrative remedy for those who believe that a carrier has wrongfully denied benefits.  5 C.F.R. § 890.105; *see also id.* § 890.107(d)(1).[7]  An enrollee who is dissatisfied with a carrier's benefits decision must first request that the carrier reconsider its decision and, if the carrier upholds its decision, seek review by OPM.  *Id.* § 890.105(a)-(d).  If OPM finds that the denial by the carrier was incorrect, the carrier must pay the benefits and "honor any case-by-case determinations that OPM makes for an individual employee."  *Gonzalez*, 62 F.4th at 896 (citing 5 U.S.C. § 8902(j)).

If OPM upholds the denial of benefits, then the enrollee may sue OPM.  *Id.*; *Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 42 (D.D.C. 1996); 5 C.F.R. § 890.107(c).  However, no lawsuit may be brought "prior to exhaustion of the administrative remedies provided in § 890.105."  5 C.F.R. § 890.107(d)(1); *see also id.* § 890.105(a)(1) ("A covered individual must exhaust both the carrier and OPM review processes . . . before seeking judicial review of the denied claim.").  And such lawsuits "must be brought against OPM and not against the carrier or carrier's subcontractors."  5 C.F.R. § 890.107(c).  In other words, "a patient who wishes to challenge a denial may sue only OPM, not [the carrier]."  *Gonzalez*, 62 F.4th at 896 (citing 5 C.F.R. § 890.107(c)).  The remedy in such a lawsuit "shall be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute."  5 C.F.R. § 890.107(c).

---

[7] The administrative remedy is also described in detail in the Statement of Benefits.  *See* 2024 Statement of Benefits at 139–41; *see also Gonzalez*, 62 F.4th at 896 ("The Plan documents describe all of these procedures.").

B.    **Plaintiffs' Allegations**[8]

Plaintiffs allege that Anthem's directory of in-network providers for the Plan contains inaccurate information regarding mental health providers, including by listing providers that are not, in fact, in-network and by listing inaccurate information for those who are. *E.g.*, Compl. ¶¶ 1–3, 10, 126–28. Plaintiffs allege these inaccuracies render the Plan materials "deceptive," including the OPM-approved Statement of Benefits and the "Find a Doctor" website referenced therein. *Id*. ¶¶ 10, 152, 165–71. And Plaintiffs allege they were harmed because the claimed inaccuracies caused them to delay or forgo treatment or forced them to incur the costs of using out-of-network providers. *E.g., id*. ¶¶ 4, 13, 76. Plaintiffs also claim these alleged inaccuracies effectively denied them the mental health benefits promised under the Plan, which they claim individually induced them into enrolling in the Plan in the first place. *E.g., id*. ¶¶ 6, 71, 87, 156, 198, 214.

Although Plaintiffs assert that Anthem's allegedly inaccurate provider directory violates several laws regarding provider networks, including the NSA, Plaintiffs do not bring any causes of action under those laws. Instead, Plaintiffs assert state law causes of action for: (1) breach of the OPM contract (specifically, the NSA provider directory provisions incorporated therein); (2) violation of N.Y. Gen. Bus. Law ("GBL") § 349; (3) violation of GBL § 350; (4) violation of N.Y. Ins. Law § 4226; (5) fraudulent misrepresentation; and (6) unjust enrichment. Compl. ¶¶ 227–84.

## ARGUMENT

I.    **PLAINTIFFS' STATE LAW CLAIMS ARE EXPRESSLY PREEMPTED BY FEHBA**

All of Plaintiffs' claims—brought solely under state law—are preempted by FEHBA's express preemption provision, 5 U.S.C. § 8902(m)(1).

---

[8] As it must, Anthem assumes the well-pled allegations in the Complaint to be true for purposes of this motion. However, Anthem notes that several allegations are not accurate and does not concede the truth of any allegation for any other purpose.

A.      The Text and Purpose of FEHBA's Preemption Provision

FEHBA contains the following express preemption provision, which gives preemptive effect to the terms of the OPM-BCBSA Contract (including the terms of the incorporated Statement of Benefits):

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1).  The Supreme Court has explained that "under § 8902(m)(1) as it now reads, state law—whether consistent or inconsistent with federal plan provisions—is displaced on matters of 'coverage or benefits.'"  *Empire*, 547 U.S. at 686.

With FEHBA's preemption provision, Congress sought to "strengthen the ability of national plans to offer uniform benefits and rates to enrollees regardless of where they may live." H.R. Rep. No. 105-374, at 9 (1997); *accord* S. Rep. No. 95-903, at 2 (1978) (legislative history of FEHBA's original preemption provision); *see also Empire*, 547 U.S. at 686.  The "policy underlying § 8902(m)(1) is to ensure nationwide uniformity of the administration of FEHBA benefits." *Burkey v. Gov't Emps. Hosp. Ass'n*, 983 F.2d 656, 600 (5th Cir. 1993) (citing *Hayes v. Prudential Ins. Co.*, 819 F.2d 921, 925 (9th Cir. 1987)).

Among other things, FEHBA's preemption provision was specifically intended to preempt state laws that purport to regulate the content of written materials distributed to FEHBA enrollees about their benefits.  OPM's predecessor, the U.S. Civil Service Commission, explained that FEHBA's preemption provision was designed in part to solve the "problem" of state "legislation and regulations" purporting to govern "the format and type of informational material that must be furnished, including in some instances the type of language to be used" in materials provided to

enrollees.  S. Rep. No. 95-903, at 7 (1978); *Mahajan v. Blue Cross Blue Shield Ass'n*, No. 16-cv-6944, 2017 WL 4250514, at *9 (S.D.N.Y. Sept. 22, 2017) (discussing legislative history).

The Supreme Court has thus interpreted FEHBA's preemption provision broadly, noting that "Congress' use of the expansive phrase 'relate to'" in defining the scope of the preemption provision "'express[es] a broad pre-emptive purpose'" and is "notably 'expansive [in] sweep.'" *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 95–96 (2017) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 384 (1992)) (alterations added by *Nevils* Court).  The Supreme Court concluded that a broad reading of § 8902(m)(1) was appropriate considering FEHBA's "statutory context and purpose":

> FEHBA concerns benefits from a federal health insurance plan for federal employees that arise from a federal law in an area with a long history of federal involvement.  Strong and distinctly federal interests are involved, in uniform administration of the program, free from state interference, particularly in regard to coverage, benefits, and payments.

*Id*. (internal quotation marks and citations omitted).

## B.    The Requirements for Express Preemption Are Met Here

There are two requirements for express preemption under FEHBA's preemption provision: (1) the state law at issue must implicate contract terms "which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits)"; and (2) the state law must "relate[] to health insurance or plans."  5 U.S.C. § 8902(m)(1); *see also Nevils*, 581 U.S. at 94 (discussing the "two preconditions on federal preemption" under FEHBA).  Both requirements are readily met by the allegations in this lawsuit.

Plaintiffs appear to concede that the first requirement for preemption is met, as they acknowledged, but did not contest, that element in their pre-motion briefing.  *See* ECF No. 18 at 2.  Plaintiffs' claims implicate numerous contractual provisions that relate to coverage or benefits, including the aforementioned mental health coverage and benefits provisions, the provisions

-10-

relating to benefits when using Preferred and Participating providers and when using non-participating providers, the provisions governing the materials describing coverage and benefits, and the NSA provisions that apply to the Plan only by virtue of the terms of the OPM-BCBSA Contract (which are found in a part of the contract entitled "Benefits," OPM-BCBSA Contract at p. II-1). There is no question these contract terms "relate to the nature, provision, or extent of coverage or benefits," 5 U.S.C. § 8902(m)(1), and Plaintiffs have not contended otherwise.

Plaintiffs instead contest the second requirement for preemption: that the state law in question relates to health insurance or plans. Plaintiffs' sole argument is that "state 'laws of general application that make absolutely no reference to health insurance or plans' do not fall within the second preemption requirement." ECF No. 18 at 2 (quoting *Empire HealthChoice Assurance, Inc. v. McVeigh*, 396 F.3d 136, 146 (2d Cir. 2005)). This assertion fails on its face. As an initial matter, N.Y. Ins. Law § 4226—the basis of Plaintiffs' Fourth Cause of Action—specifically applies to "insurer[s] authorized to do in this state the business of life, or accident and health insurance," and thus plainly references "health insurance." N.Y. Ins. Law § 4226(a). Plaintiffs offer no explanation as to how FEHBA's second requirement for preemption is unmet as to N.Y. Ins. Law § 4226, and Plaintiffs' attempt to apply N.Y. Ins. Law § 4226 to regulate Anthem's administration of the Plan belies any argument that it is not related to health insurance or plans.

As to their remaining causes of action, however, Plaintiffs are wrong in their assertion that laws of general application that do not reference "health insurance or plans" fall outside of FEHBA's express preemption provision. The only authority Plaintiffs cite on this point is the Second Circuit's opinion in *Empire*. But that statement is pure dicta, because that case related solely to whether federal question jurisdiction existed, not whether express preemption occurred.

*See Mahajan*, 2017 WL 4250514, at *8.

More importantly, whether dicta or not, the statement from the Second Circuit's *Empire* decision cannot survive the Supreme Court's subsequent decision in *Nevils*, holding that FEHBA expressly preempted Missouri's common-law doctrine precluding subrogation and reimbursement. 581 U.S. at 93. That doctrine is not specific to health insurance or plans; indeed, the case the Supreme Court cited as representative of that doctrine involved business insurance. *Id.* (citing *Benton House, LLC v. Cook & Younts Ins., Inc.*, 249 S.W.3d 878, 881–82 (Mo. App. 2008)). Nonetheless, the Court held that the state's rule was preempted by FEHBA. In fact, this Court has previously held that *Nevils* teaches that state laws of general application that do not reference health insurance or plans still trigger FEHBA's second requirement for preemption, and other courts have reached the same conclusion. *See Mahajan*, 2017 WL 4250514, at *7–8; *Ray v. Tabriz*, No. 23-cv-1467, 2025 WL 306175, at *2 (N.D. Ill. Jan. 27, 2025); *see also Kaiser Foundation Health Plan, Inc. v. Maylone*, No. 55585-9-II, 2022 WL 3754902, at *7 (Wash. Ct. App. Aug. 30, 2022).

Numerous other courts have also held state laws of general application to be preempted by FEHBA. *See, e.g., Gonzalez*, 62 F.4th at 904 (plaintiff's state common law claims preempted by FEHBA even though those laws "do not specifically relate to health insurance," because "preemption reaches even a state's general laws when their application relates to the scope or administration of federal healthcare plans," a result "compel[led]" by the Supreme Court's interpretation of similar preemption provisions) (citing *Morales*, 504 U.S. at 384, 386); *Bryan v. OPM*, 165 F.3d 1315, 1320 (10th Cir. 1999) (FEHBA preempts Oklahoma attorney fee statute applicable to many types of insurance other than health); *Hayes v. Prudential Ins. Co.*, 819 F.2d 921, 926 (9th Cir. 1987) (finding various state common law and statutory claims to be preempted

under FEHBA's original, narrower preemption provision, including breach of contract and breach of fiduciary duty claims); *Russell v. Gennari*, No. 1:07cv793, 2007 WL 3389998, at *5 (E.D. Va. Nov. 8, 2007), *aff'd*, 284 F. App'x 98 (4th Cir. 2008) (professional negligence and breach of fiduciary duty claims preempted by FEHBA); *see also Morales*, 504 U.S. at 383 ("a State's general consumer protection laws" qualify as laws "relating to rates, routes, or services of any air carrier" so as to fall within the ambit of the Airline Deregulation Act's preemption provision); *id.* at 386 (dismissing the argument that the preemption provision "imposes no constraints on laws of general applicability," a theory this Court has "consistently rejected" in the ERISA context); *Metro. Life Ins. Co. v. Christ*, 979 F.2d 575, 576, 579 (7th Cir. 1992) (finding "state divorce decree and state law equitable principles" to be preempted by a preemption provision nearly identical to FEHBA's original, narrower provision).

Plaintiffs' claims here are much like claims this Court and other courts have found to be preempted.  In *Mahajan*, just like this case, a Plan enrollee alleged that BCBSA's misrepresentations about the Plan's provider network violated GBL §§ 349 and 350, fraudulently induced her to enroll in the Plan, and constituted negligent misrepresentation.  *See* 2017 WL 4250514, at *5.  This Court held that each of those claims were expressly preempted by FEHBA. *See id.* at *6-9.  *Gonzalez* involved allegations that BCBSA breached the OPM-BCBSA Contract by imposing a process that was not contained in the Plan terms and fraudulently or negligently misrepresented the Plan terms.  *See* 62 F.4th at 903.  The court found those claims, among others, to be preempted.  *See id.* at 903-04.  Plaintiffs' claims here are likewise preempted by FEHBA.

## II.    PLAINTIFF'S CLAIMS ARE IMPLIEDLY PREEMPTED BY FEHBA

Even if the statute had no express preemption provision, FEHBA would still preempt Plaintiffs' claims impliedly.  Implied preemption occurs when the state law claims "'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"

*In re Trib. Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 81 (2d Cir. 2019) (quoting *Hillman v. Maretta*, 569 U.S. 483 (2013)).  Here, Plaintiffs' claims are also impliedly preempted because they interfere with OPM's exclusive authority over FEHBA and because they undermine the uniform nationwide administration of a FEHBA plan.

As described above, Congress delegated to OPM the exclusive authority to police the conduct, policies, and practices of FEHBA carriers, and OPM has promulgated extensive regulations on the topic.  *See* 5 U.S.C. §§ 8902(e), 8910, 8913(a); 48 C.F.R. § 1600 *et seq.*; *see also Bridges*, 935 F. Supp. at 42–43; *Kight v. Kaiser Found. Health Plans of Mid-Atl. States, Inc.*, 34 F. Supp. 2d 334, 342 (E.D. Va. 1999).  In this case, Plaintiffs' attempt to use state law to regulate the conduct of a FEHBA carrier and the terms of a FEHBA plan conflicts with the broad enforcement powers Congress gave to OPM.  The court in *Kight* reached just that conclusion: "Congress already adopted an enforcement scheme in FEHBA whereby it delegated the power to police the administration of FEHBA plans to OPM."  34 F. Supp. 2d at 342.  Where a plaintiff "attempt[s] to seek state law review of Plan administrative policies," it "directly conflicts with the OPM powers," resulting in preemption "under traditional conflict preemption principles."  *Id.*; *accord Mahajan*, 2017 WL 4250514, at *11.

Plaintiffs' state law claims interfere with several aspects of OPM's exclusive authority. First, OPM has broad power to ensure that a FEHBA carrier's marketing materials are "truthful and not misleading" and to punish a carrier's failure in that regard through financial penalties, suspending new enrollment under the contract, or terminating the contract entirely, among other actions.  48 C.F.R. § 1652.203-70(a), (c), (d).  OPM also has the authority to order "corrective action to protect the interest of Federal Members" like Plaintiffs, including by "[d]irecting the Carrier to cease and desist" use of the marketing material and to issue corrections to enrollees.  *Id.*

§ 1652.203-70(c); *see also* OPM-BCBSA Contract §§ 1.13, 1.14. Plaintiffs' state law claims

seeking to regulate the content of Anthem's "advertising, marketing, and program materials,"

Compl. ¶ 170; *see also id.* ¶¶ 71, 87, 167, conflict with OPM's authority. That is particularly true

to the extent that alleged misrepresentations are in the Plan's Statement of Benefits, *see, e.g.*, *id.*

¶ 170, which is a document that is "[a]uthorized for distribution by" OPM, 2024 Statement of

Benefits at cover page; *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1233 (8th Cir. 2012), and which

was intended by Congress to contain provisions that *the Office* [*i.e.*, *OPM*] "considers necessary

or desirable," 5 U.S.C. § 8902(d) (emphasis added).

Second, OPM has broad authority over the Plan's provider network. Under the OPM-

BCBSA contract, any "[a]ddition or termination of provider agreements" is a "Significant Event"

of which OPM must be notified within ten days. OPM-BCBSA Contract § 1.10(a)(4). Further,

with respect to any Significant Event, OPM has broad remedial powers, including the ability to

direct BCBSA or Anthem to take corrective action, to withhold payments, to suspend new

enrollments in the Plan, to allow impacted enrollees to transfer to another FEHBA plan, or to

terminate the contract entirely. *Id.* § 1.10(b). Those OPM enforcement powers are specifically

meant "to protect the interest of Members" like Plaintiffs. *Id.* Plaintiffs' claims seeking to regulate

the scope of the Plan's provider network conflict with that OPM authority.

Aside from interfering with OPM's exclusive authority, Plaintiffs' state law claims also

stand as an obstacle to Congress's intent that each FEHBA plan be administered uniformly

nationwide. *See Mahajan*, 2017 WL 4250514, at *10. The application of 50 different sets of state

laws to the Plan would make it impossible to administer the Plan uniformly in each state and would

drive up costs as the carrier would need to stay abreast of, and in compliance with, each of those

laws. *See id.* "'[F]ederal programs that by their nature are and must be uniform in character

throughout the Nation necessitate formulation of controlling federal rules.'" *Helfrich v. Blue Cross and Blue Shield Ass'n*, 804 F.3d 1090, 1099 (10th Cir. 2015) (quoting *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728 (1979)).  In *Helfrich*, the court held that when state laws conflict with the "strong federal interest in uniformity" under FEHBA, such state laws are displaced by federal law.  *Id.*; *see also id.* at 1095–1103.

Because Plaintiffs' state law claims stand as an obstacle both to OPM's exclusive authority over FEHBA plans and to the nationwide uniformity Congress envisioned, their claims are impliedly preempted by FEHBA.

## III.    PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS FAILED TO UTILIZE AVAILABLE ADMINISTRATIVE REMEDIES

As set forth above, FEHBA explicitly calls for OPM to decide benefits issues, 5 U.S.C. § 8902(j), and the agency has promulgated detailed regulations for doing so, 5 C.F.R. §§ 890.105, 890.107.  Plaintiffs say that remedy does not apply because they "are not disputing Anthem's decision to deny coverage on any particular benefit claim."  ECF No. 18 at 1.  Plaintiffs' argument misses the mark.  To begin with, OPM's regulations cover more than benefit disputes.  5 C.F.R. § 890.107(b) allows for suits against OPM over OPM's regulations.  That provision allows for suits by enrollees stemming "from dissatisfaction with the OPM's general programmatic decisions," but requires such suits be brought against OPM.  *Bridges*, 935 F. Supp. at 42.  Thus, "the detailed enforcement scheme of the FEHBA leaves no room for" an action against Anthem here.  *See id.* at 43.

Additionally, where, as here, an enrollee alleges that a health plan carrier made misrepresentations about the enrollee's coverage or benefits under the terms of the plan, those claims must also be pursued through FEHBA's remedy for benefits disputes.  *See, e.g.*, *Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390 (9th Cir. 2002), *opinion amended on*

*denial of rehearing*, 319 F.3d 1078 (9th Cir. 2003); *Cicio v. Vytra Healthcare*, 321 F.3d 83, 96–97 (2d Cir. 2003), *vacated on other grounds*, 542 U.S. 933 (2004); *cf. Cicio v. Vytra Healthcare*, 208 F. Supp. 2d 288, 296 (E.D.N.Y. 2001) (concluding "negligent misrepresentations about the scope of coverage under the Policy" fall within the scope of ERISA's similar remedies provision, *aff'd*, 385 F.3d 156 (2d Cir. 2004)).

In *Botsford*, for instance, a Plan enrollee underwent a "$3,036.00 medical procedure" performed by an out-of-network provider and "received a reimbursement check for only $915.74" from the Plan. 314 F.3d at 392. Instead of utilizing FEHBA's administrative remedy, the plaintiff in *Botsford* filed suit in federal court, alleging a "state statutory claim," under the Montana Unfair Trade Practices Act ("MUTPA"), Mont. Code Ann. § 33-18-201(1), premised on the theory that the FEHBA carrier "misrepresent[ed] the policy regarding reimbursement of non-participating providers." *Id.* at 392–93.[9] The Ninth Circuit concluded that "Montana Code Section 33-18-201(1) conflicts with, and is therefore preempted by, FEHBA." *Id.* at 393. "[A]lthough [the enrollee] stated his claim as a breach of state law, it really amounts to an alternative method of remedying a contractual breach" of the Plan terms. *Id.* at 396. The court went on to hold that the enrollee's exclusive remedy was the one offered under FEHBA. *See id.* at 396–99. Accordingly, any remedies available under MUTPA were displaced. *See id.* at 396; *see also Kight*, 34 F. Supp. 2d at 336, 340 (in action against FEHBA carrier "for concealing a physician financial incentive program" that "allegedly encouraged physicians to reduce the quality of medical care to patients," plaintiff's claims for "direct negligence for failure to establish policies and guidelines," for "tortious interference with contract," and for fraud all fell under FEHBA's administrative remedy

---

[9] *Botsford* also alleged "various state common law causes of action, such as fraud" and "negligent misrepresentation," but voluntarily dismissed all but the MUTPA claim. *Id.* at 392, 393.

because all "are in essence a claim that plaintiff was denied medical benefits because of the alleged physician financial incentive program").

The Supreme Court addressed the same issue in the analogous ERISA context in *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004). A key issue there was whether the plaintiffs' claims fell within ERISA's civil remedies provision—ERISA § 502(a)(1)(B)—which allows for suits by ERISA participants "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). The plaintiffs alleged that they had suffered physical injuries because of their ERISA plan's denial of coverage for certain treatment. 542 U.S. at 204–05. The plaintiffs elected not to pursue their remedies under ERISA and instead filed suit for tort damages they alleged followed from the denial of coverage. *See id*. at 204–06; *see also id*. at 214–15. The Supreme Court held that the plaintiffs' only remedy was under ERISA § 502(a)(1)(B): "Upon the denial of benefits, [plaintiffs] could have paid for the treatment themselves and then sought reimbursement through [ERISA's civil remedies provision], or sought a preliminary injunction," which, if successful, would have avoided all injuries alleged. *Id*. at 211.

Plaintiffs are wrong that their claims here do not constitute disputes that fall within 5 C.F.R. § 890.105's administrative remedy. Plaintiff Cavallero-Kearins alleges that she was unable to identify an in-network provider using the Plan directory, and she was "left with no other option than to go out-of-network." Compl. ¶¶ 74-76, 79. She alleges that she "had to spend thousands of dollars on out-of-network providers" and "the reimbursement from Anthem was a tiny fraction of her out-of-pocket costs." *Id*. ¶ 76. And she further alleges Anthem "[o]n numerous occasions" stated it had not received her requests for reimbursement. *Id*. ¶ 80. But Ms. Cavallero-Kearins's complaints about inadequate, delayed, or denied reimbursement of out-of-network costs are

precisely the sort of benefits disputes that must be addressed through FEHBA's mandatory administrative dispute process. *See Botsford*, 314 F.3d at 396–99.

Plaintiff Doe likewise should have pursued her claims through FEHBA's administrative remedies. Doe alleges that she was unable to find an in-network provider using the Plan directory "with the training or experience necessary to provide adequate care within a reasonable distance of her home." Compl. ¶ 92. As the Supreme Court has recognized, the remedy for such a claim is to obtain treatment and then seek reimbursement through the provided administrative process. *See Aetna Health*, 542 U.S. at 211. And while Doe alleges she was "unable to financially afford out-of-network care" and therefore had to "forgo care," Compl. ¶ 93, Doe could have informed Anthem of her difficulty in finding an in-network provider and requested an accommodation such as a single-case agreement that would have allowed her to see an out-of-network provider at in-network rates. *See Jamie F. v. UnitedHealthCare Ins. Co.*, No. 19-CV-1111-YGR, 2020 WL 6802416, at *1 (N.D. Cal. Nov. 19, 2020) ("A [single-case agreement] is an agreement between a non-network provider and a . . . claims administrator pursuant to which the claims administrator agrees to pay a set rate for . . . treatment for the individual claimant"); *Robert O. v. Harvard Pilgrim Health Care, Inc.*, No. 2:17-CV-1251-TC, 2019 WL 3358706, at *3 (D. Utah July 25, 2019) ("Single case agreements are contracts between the insurer and the out-of-network provider that allow the consumer to see his or her out-of-network provider, usually at a negotiated in-network rate." (*quoting* Miriam Ruttenberg, Esq., Choice and Continuity of Care as Significant Health Issues for Equality in Mental Health Care, 10 J. of Health & Biomedical L. 201, 209 (2014)). Had Anthem refused to provide such an accommodation or otherwise failed to provide Doe with benefits under the Plan, Doe could have pursued her claims through FEHBA's administrative remedy under 5 C.F.R. §§ 890.105 and 890.107.

In short, both Plaintiffs had a straightforward remedy to obtain exactly the coverage they sought through FEHBA's administrative remedy. That Plaintiffs failed to pursue their available remedy does not excuse them from complying with FEHBA's requirements; rather, it bars them from seeking judicial relief on claims for which they failed to exhaust these remedies. 5 C.F.R. § 890.107.

The Second Circuit has held that a failure to exhaust FEHBA's administrative remedy should result in the dismissal of the enrollee's lawsuit. *See Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993); *see also Kobleur v. Grp. Hospitalization & Med. Servs., Inc.*, 954 F.2d 705, 710–11 (11th Cir. 1992). A pre-suit exhaustion requirement "may arise from explicit statutory language or from an administrative scheme providing for agency relief." *Kennedy*, 989 F.2d at 592 (citation omitted). The court in *Kennedy* concluded that the administrative remedy set forth in OPM's regulations satisfies the latter option. *See id*. at 593–94. Accordingly, it affirmed the dismissal of the enrollee's claims for failure to exhaust that remedy. *See id*. at 594, 596.[10] Because Plaintiffs' claims are cognizable under OPM's administrative remedy, they must be dismissed.

## IV.    PLAINTIFFS CANNOT SUE AS THIRD-PARTY BENEFICIARIES

Plaintiffs' First Cause of Action for breach of the OPM-BCBSA Contract must also be dismissed for the additional reason that Plaintiffs, as non-parties to that contract, are not entitled to sue Anthem to enforce the contract's terms. That was the conclusion correctly reached by the

---

[10] In *Kennedy*, the court found the exhaustion requirement to exist even though OPM's regulations were, at the time, ambiguous as to whether the administrative remedy was mandatory or optional. *Id*. at 592-93. OPM has since removed any ambiguity and its regulations now make clear that exhaustion is required. *See* 5 C.F.R. § 890.107(d)(1) (a lawsuit "[m]ay not be brought prior to exhaustion of the administrative remedies provided in § 890.105"). Thus, this case presents an even stronger case for dismissal for failure to exhaust than did *Kennedy*.

only case that directly addresses whether Plan enrollees are *intended* third-party beneficiaries of the OPM-BCBSA Contract *with the right to sue* to enforce its terms. *See Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 763–69 (W.D.N.Y. 2017). And it is the only conclusion consistent with recognized constraints on third party rights to sue, which are heightened where a private party seeks to enforce governmental rights under a government contract.

Third parties can enforce a contract only when they are "intended," rather than "incidental," beneficiaries of the contract. Restatement (Second) of Contracts § 302 (Am. Law Inst. 1981). Although some courts use the terms differently (or use different terms), the Restatement uses "intended beneficiary" to refer to a beneficiary who "acquires a right [to sue] by virtue of a promise" while an "incidental beneficiary" does not. *Id.* at cmt. a. Even under non-government contracts, "[p]roving third-party beneficiary status requires that the contract terms 'clearly evidence[] an intent to permit enforcement by the third party' in question." *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, N.A.*, 747 F.3d 44, 49 (2d Cir. 2014) (citation omitted); *see also JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 600 (5th Cir. 2007).

Under federal government contracts, it is even more difficult to show that a third-party was intended to have the right to sue to enforce the contract. *See Rivera v. Bank of Am. Home Loans*, No. 09 CV 2450, 2011 U.S. Dist. LEXIS 43138, at *13 (E.D.N.Y. Apr. 21, 2011) (citing Restatement (Second) of Contracts § 313 cmt. a (Am. Law Inst. 1981)); *see also Cent. Sw. Tex. Dev., L.L.C. v. JPMorgan Chase Bank, N.A.*, 780 F.3d 296, 299–300 (5th Cir. 2015). The Supreme Court has recognized the heightened standard under government contracts: "[t]he distinction between an intention to benefit a third party and an intention that the third party should have the right to enforce that intention is emphasized where the promisee is a governmental entity." *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 118 (2011) (citation and internal quotations marks

omitted); *see also Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1160 (9th Cir. 2016) (demonstrating status as an intended beneficiary with rights to enforce a government contract is a "'comparatively difficult task'") (citation omitted).

The burden is on a plaintiff to point to specific language in the contract demonstrating an intent to permit a third party to sue to enforce the contract's terms. *See Nguyen v. United States Catholic Conf.*, 719 F.2d 52, 55 (3d Cir. 1983); *Fero*, 236 F. Supp. 3d at 769; *Cade v. BAC Home Loans Servicing, LP*, No. 10-CV-4224, 2011 WL 2470733, at *4 (S.D. Tex. June 20, 2011). "[S]ilence cannot be interpreted to manifest a clear intent to permit enforcement." *Fero*, 236 F. Supp. 3d at 769.

Plaintiffs argue that they are within the class of individual that the OPM-BCBSA Contract was intended to benefit. ECF No. 18 at 3. But more is required. To bring a third-party breach of contract claim, a plaintiff must show that "the contract intended to provide the plaintiff with a legal cause of action, not just [that] the plaintiff falls within a class of individuals that the contract and its underlying policies seek to benefit." *Alpino v. JPMorgan Chase Bank, N.A.*, No. 10-12040, 2011 U.S. Dist. LEXIS 43210, at *9-10 (D. Mass. Apr. 21, 2011); *see also Skillman-Eastridge, Ltd. v. JPMorgan Chase Bank, Nat. Ass'n*, No. 3:09-CV-01988-M, 2011 WL 4528391, at *4 (N.D. Tex. Sept. 29, 2011). For that reason, the court in *Fero* held that even though the OPM-BCBSA Contract's purpose was "to benefit federal employees," those employees could not bring a breach of contract action because "'[p]roving third-party beneficiary status requires that the contract terms clearly evidence an *intent to permit enforcement* by the third party in question.'" 236 F. Supp. 3d at 768 (quoting *Hillside Metro Assocs.*, 747 F.3d at 49).

Here, Plaintiffs cannot point to any contract provisions demonstrating that OPM and BCBSA intended Plan enrollees like Plaintiffs to be able to sue Anthem to enforce the contract's

-22-

NSA provisions or any provisions for that matter.  To the contrary, the contract indicates they have

no such right.  The contract does contain provisions allowing Plan enrollees to sue regarding

enrollment disputes, benefits disputes, and challenges to OPM regulations, but requires such suits

be brought against the government only (either the government employing office or OPM).  OPM-

BCBSA Contract § 2.8(g); *see also* 2024 Statement of Benefits at 140.  The lack of similar

provisions for lawsuits against the carrier indicates the contracting parties did not intend there to

be such a right.  *Cf. Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) (explaining that "a negative

inference may be drawn from the exclusion of language from one statutory provision that is

included in other provisions of the same statute"); *Russello v. United States*, 464 U.S. 16, 23

(1983).

     Further, as discussed above, the OPM-BCBSA Contract (and OPM's regulations)

repeatedly places exclusive enforcement responsibility *with OPM* for a wide range of matters,

including marketing and other Plan materials and literature and provider networks.  *See, e.g.*,

OPM-BCBSA Contract §§ 1.9(k), 1.10(a)(4), (b), 1.11, 1.12(a), 1.13(d), 1.14(c), (d).  In short, the

contract is rife with references to OPM's ability to enforce the contract, including numerous rights

for OPM to take action it deems necessary "to protect the interests of" enrollees.  *E.g., id.* § 1.10(b),

1.12(a), 1.14(c).  But the contract is silent as to any right of enrollees to sue Anthem.  Accordingly,

enrollees such as Plaintiffs do not have such a right, and thus are not intended third-party

beneficiaries of the OPM-BCBSA Contract that may sue to enforce its terms.  *Fero*, 236 F. Supp.

3d at 769.

## V.    PLAINTIFFS CONCEDE THAT BENEFIT-OF-THE BARGAIN DAMAGES ARE UNAVAILABLE TO THEM

     Last, Plaintiffs conceded in their response to Anthem's pre-motion letter that "benefit-of-

the-bargain" damages are barred in this case by the filed-rate doctrine.  ECF No. 18 at 3; *see Fero*,

236 F. Supp. 3d at 780-81.  Accordingly, in the event any aspect of the Complaint survives this motion, the Court should enter an order striking benefit-of-the-bargain damages (including portions of Paragraphs 199 and 233 of the Complaint) and precluding Plaintiffs from obtaining, seeking, or referencing benefit-of-the-bargain damages in any future proceeding in this matter.

## <u>CONCLUSION</u>

For these reasons, Plaintiffs' Complaint should be dismissed in full with prejudice.

Dated: March 28, 2025                   Respectfully Submitted,


By:    /s/ Matthew J. Aaronson
       Matthew J. Aaronson
       TROUTMAN PEPPER LOCKE LLP
       875 Third Avenue
       New York, NY 10022
       T: (212) 704-6000
       matthew.aaronson@troutman.com

       Adam P. Feinberg (admitted *pro hac vice*)
       MILLER & CHEVALIER CHARTERED
       900 16th Street NW
       Washington, DC 20006
       T: (202) 626-6087
       afeinberg@milchev.com

       *Attorneys for Defendant*
       *Anthem HealthChoice Assurance, Inc.*

-24-

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 2.B of the Court's Individual Rules and Practices in Civil Cases, I HEREBY CERTIFY that this motion complies with the Court's word-count limitations and contains 7,542 words, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

/s/ Matthew J. Aaronson
_____
Matthew J. Aaronson

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by CM/ECF to all counsel of record on this 28th day of March 2025.

/s/ Matthew J. Aaronson
Matthew J. Aaronson