UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE on behalf of BABY DOE, a minor, and PATRICIA CAVALLARO-KEARINS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHEM HEALTHCHOICE ASSURANCE, INC., d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD, and d/b/a ANTHEM BLUE CROSS, and ANTHEM HP, LLC, d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD HP, and d/b/a ANTHEM BLUE CROSS HP,<br><br>Defendant. | Civil Action No. 1:24-cv-08012 |

## DEFENDANT ANTHEM HEALTHCHOICE ASSURANCE, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Matthew J. Aaronson
TROUTMAN PEPPER LOCKE LLP
875 Third Avenue
New York, NY 10022
T: (212) 704-6000
matthew.aaronson@troutman.com

Adam Feinberg (admitted *pro hac vice*)
MILLER & CHEVALIER CHARTERED
900 16th Street NW
Washington, DC 20006
T: (202) 626-6087
afeinberg@milchev.com

*Attorneys for Defendant*
*Anthem HealthChoice Assurance, Inc.*

Date: May 30, 2025
New York, New York

**TABLE OF CONTENTS**

**Page**

ARGUMENT ............................................................................................................................... 1

I.  PLAINTIFFS' CLAIMS ARE EXPRESSLY PREEMPTED ........................................... 1

    A.  Plaintiffs Misunderstand *Empire* and *Nevils* ............................................... 1

    B.  The Second Circuit's Statements in *Empire* Are Dicta ............................................ 3

    C.  The Second Circuit's Statements Cannot Survive *Nevils* ...................................... 4

    D.  FEHBA's Preemption Provision Applies to Laws of General Application ............ 5

II.  PLAINTIFFS' CLAIMS ARE IMPLIEDLY PREEMPTED ............................................. 7

III. DISMISSAL IS WARRANTED BECAUSE PLAINTIFFS FAILED TO UTILIZE AVAILABLE ADMINISTRATIVE REMEDIES ............................................................. 8

IV. PLAINTIFFS CANNOT SUE AS THIRD-PARTY BENEFICIARIES ........................... 9

V.  PLAINTIFFS CONCEDE THAT BENEFIT-OF-THE BARGAIN DAMAGES ARE UNAVAILABLE .................................................................................................. 11

CONCLUSION ........................................................................................................................... 11

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004)........................................................................................................8

*In re Arab Bank, PLC Alien Tort Statute Litig.*,
   808 F.3d 144 (2d Cir. 2015)..........................................................................................3, 4

*Bell v. Blue Cross & Blue Shield of Okla.*,
   823 F.3d 1198 (8th Cir. 2016) .........................................................................................7

*Botsford v. Blue Cross & Blue Shield of Mont., Inc.*,
   314 F.3d 390 (9th Cir. 2002), *opinion amended on denial of rehearing*, 319
   F.3d 1078 (9th Cir. 2003) ................................................................................................9

*Brecht v. Abrahamson*,
   507 U.S. 619 (1993)........................................................................................................4

*Calingo v. Meridian Res. Co. LLC*,
   No. 7:11-cv-628, 2011 WL 3611319 (S.D.N.Y. Aug. 16, 2011) ..................................12

*Carrol v. Carroll's Lessee*,
   57 U.S. 275 (1853)..........................................................................................................3

*Clarex Ltd. v. Natixis Sec. Am. LLC*,
   No. 12 CIV. 7908 PAE, 2013 WL 2631043 (S.D.N.Y. June 11, 2013) ........................11

*Coventry Health Care of Missouri, Inc. v. Nevils*,
   581 U.S. 87 (2017)..........................................................................................1, 3, 4, 5, 6

*Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*,
   749 F. Supp. 3d 456 (S.D.N.Y. 2024)............................................................................5

*Empire HealthChoice Assurance, Inc. v. McVeigh*,
   396 F.3d 136 (2d Cir. 2005).......................................................................1, 2, 3, 4, 5, 6, 7

*Empire HealthChoice Assurance, Inc. v. McVeigh*,
   547 U.S. 677 (2006).................................................................................................2, 3, 7

*Fero v. Excellus Health Plan, Inc.*,
   236 F. Supp. 3d 735 (W.D.N.Y. 2017) .....................................................................9, 11

*Hamdan v. Rumsfeld*,
   548 U.S. 557 (2006)......................................................................................................10

*Helfrich v. Blue Cross & Blue Shield Ass'n*,
 804 F.3d 1090 (10th Cir. 2015) ........................................................................................7

*Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, N.A.*,
 747 F.3d 44 (2d Cir. 2014)................................................................................................9

*Inspire Malibu v. Anthem Blue Cross Life & Health Ins. Co.*,
 No. CV 16-5229, 2016 WL 5746337 (C.D. Cal. Sept. 30, 2016).....................................6

*Jimenez v. Walker*,
 458 F.3d 130 (2d Cir. 2006).............................................................................................3

*Mahajan v. Blue Cross Blue Shield Ass'n*,
 *No.*, 16-cv-6944, 2017 WL 4250514 (S.D.N.Y. Sept. 22, 2017)..............................5, 7

*Marx v. Gen. Revenue Corp.*,
 568 U.S. 371 (2013)..........................................................................................................6

*McKoy v. North Carolina*,
 494 U.S. 433 (1990) (Blackmun, J., concurring).............................................................4

*Morales v. Trans World Airlines, Inc.*,
 504 U.S. 374 (1992).......................................................................................................3, 4

*Packer v. Raging Capital Mgmt*,
 105 F.4th 46 (2024)..........................................................................................................5

*Premium Mortg. Corp. v. Equifax, Inc.*,
 583 F.3d 103 (2d Cir. 2009).............................................................................................9

*Russello v. United States*,
 464 U.S. 16 (1983)..........................................................................................................10

*SEC v. Govil*,
 86 F.4th 89 (2d Cir. 2023) ..............................................................................................11

*Sullivan v. Am. Airlines, Inc.*,
 424 F.3d 267 (2d Cir. 2005).............................................................................................1

**Statutes and Rules**

5 U.S.C. § 8902(m)(1) ...............................................................................................................1, 6

5 U.S.C. § 8913(a) .........................................................................................................................7

42 U.S.C. § 300gg-115(b)..............................................................................................................8

N.Y. Ins. Law § 4226....................................................................................................................6

48 C.F.R. § 1652.203-70 ........................................................................................................... 7

Fed. R. Civ. P. 12(h)(1), (3) ..................................................................................................... 11

Anthem HealthChoice Assurance, Inc. ("Anthem") submits this Reply Memorandum in further support of its motion to dismiss (ECF No. 24) and in response to Plaintiffs' Opposition to Defendant's Motion to Dismiss (ECF No. 29) ("Opposition" or "Opp.").

## ARGUMENT

**I.      PLAINTIFFS' CLAIMS ARE EXPRESSLY PREEMPTED**

The parties agree there are two requirements for express preemption: that the dispute implicate contract terms "which relate to the nature, provision, or extent of coverage or benefits" and that the state law "relate[] to health insurance or plans." 5 U.S.C. § 8902(m)(1); *see also Coventry Health Care of Missouri, Inc. v. Nevils*, 581 U.S. 87, 94 (2017); Opp. at 5. Relying mainly on the Second Circuit's decision in *Empire HealthChoice Assurance, Inc. v. McVeigh*, 396 F.3d 136 (2d Cir. 2005), Plaintiffs claim the second requirement is unmet. Plaintiffs are wrong because the statements in *Empire* they rely on are dicta, and because the Supreme Court in Nevils subsequently made clear that dicta was wrong.

**A.      Plaintiffs Misunderstand *Empire* and *Nevils***

Plaintiffs' arguments ignore the difference between the jurisdictional doctrine of complete preemption (at issue in *Empire*) and ordinary preemption (at issue here and in *Nevils*). "Under the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims—i.e., completely preempted." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005). Conversely, ordinary preemption is insufficient to confer jurisdiction. *Id*. at 271. Complete preemption exists under only a handful of federal statues, *id*. at 272–73, while "far more" establish ordinary preemption such that "the defendant cannot be held liable under state law." *Id*.

1

The plaintiff in *Empire* argued for jurisdiction based on complete preemption, among other arguments. In addressing that jurisdictional argument, the Second Circuit rejected a broad reading of FEHBA's preemption provision. *See* 396 F.3d at 147. It also rejected reliance on ERISA cases that had found complete preemption because "ERISA is significantly more comprehensive than FEHBA, in that it contains multiple preemption provisions and a detailed civil enforcement scheme intended to completely supplant state law." *Id*. Importantly, the court held that even if ordinary preemption applied, that would be insufficient to confer jurisdiction because "the well-pleaded complaint rule precludes a party from invoking federal jurisdiction merely because it anticipates a defense that will be preempted by federal law." *Id*. at 145 n.9; *see also id*. at 150 ("even if federal law is likely to preempt McVeigh's defenses and thereby to affect the outcome of the case, this is insufficient to create federal jurisdiction"). Thus, the Second Circuit's analysis of whether FEHBA's second requirement for ordinary preemption was met was unnecessary to its conclusion—classic dicta.

The Supreme Court's decision in *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), affirming the Second Circuit, likewise analyzes *complete* preemption. The Supreme Court's analysis on this point tracks the Second Circuit's, except that it excludes the dicta: "If Congress intends a preemption instruction completely to displace ordinarily applicable state law, and to confer federal jurisdiction thereby, it may be expected to make that atypical intention clear." *Id*. at 698. The Court found that exacting standard unmet. *See id*. The Court instead called for a "cautious interpretation" and "a modest reading of the [FEHBA preemption] provision." *Id*. at 697–98. And while the Court found it "plausible" that FEHBA's preemption provision triggered ordinary preemption, even if it did, "that provision is not sufficiently broad to confer federal

2

jurisdiction." *Id*. The Court thus affirmed the Second Circuit's conclusion that FEHBA did not establish *complete* preemption that would confer jurisdiction. *See id*. at 699.

*Nevils*, in contrast, was solely about ordinary preemption. *See* 581 U.S. at 97. *Nevils* explained that, in *Empire*, the Supreme Court "had no cause to consider § 8902(m)(1)'s text, context, and purpose," as it proceeded to do in *Nevils*. *Id*. The Court held that "Congress' use of the expansive phrase 'relate to'" evidences "'a broad pre-emptive purpose.'"*Id*. at 95–96 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)). Based on its construction, it concluded that contractual subrogation and reimbursement provisions "override state law barring subrogation and reimbursement." *Id*. at 91.

### B. The Second Circuit's Statements in *Empire* Are Dicta

With the distinction between complete and ordinary preemption in mind, the Second Circuit's statements in *Empire* are plainly dicta. As both it and the Supreme Court recognized, there was no federal jurisdiction due to a lack of complete preemption, regardless of whether ordinary preemption existed. *See* 547 U.S. at 698; 396 F.3d at 145 n.9, 150. Courts are never "bound by any part of an opinion, in any case, which was not needful to the ascertainment of the right or title in question between the parties." *Carrol v. Carroll's Lessee*, 57 U.S. 275, 287 (1853); *see also Jimenez v. Walker*, 458 F.3d 130, 142-42 (2d Cir. 2006) (citing *Carroll*). That the Supreme Court affirmed the Second Circuit's holding that complete preemption—and thus jurisdiction—was lacking without analyzing ordinary preemption confirms the Second Circuit's statements about ordinary preemption are dicta. *See* 547 U.S. at 698–99.

Plaintiffs nevertheless claim that the Second Circuit's analysis remains good law because they contend the Supreme Court affirmed on an alternative ground and, under *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144 (2d Cir. 2015), such an affirmance would leave intact the Second Circuit's ruling. But *Arab Bank* is irrelevant because it, unlike *Empire*, involved a completely unrelated and alternative ground for affirmance. In *Empire*, both the Second Circuit and the Supreme Court held that complete preemption did not create federal question jurisdiction, regardless of whether ordinary preemption applied. *See* 547 U.S. at 698; 396 F.3d at 145 n.9, 150.

3

The Second Circuit's statement that one requirement for ordinary preemption was unmet was not an independent holding outside of the complete preemption holding; it was dicta *within* the complete preemption holding. *Arab Bank* cannot convert this dicta into binding precedent.

### C. The Second Circuit's Statements Cannot Survive *Nevils*

Assuming the Second Circuit's dicta in *Empire* was binding, Plaintiffs argue that *Nevils* does not displace the Second Circuit's analysis because the parties in *Nevils* did not contest FEHBA's second requirement for preemption. *E.g.*, Opp. at 8–10. Plaintiffs argue that "cases are not binding where they 'never squarely addressed the issue, and have at most assumed the applicability' of a particular legal standard." *Id.* at 9 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). But *Brecht* addresses whether the Supreme Court itself is bound "by way of *stare decisis*." 507 U.S. at 631. The issue here is whether lower courts are bound. They are, because "even if the issue had not been disputed, the [Supreme] Court's resolution of the question would constitute a binding precedent." *McKoy v. North Carolina*, 494 U.S. 433, 445 (1990) (Blackmun, J., concurring).

In any event, *Nevils* "h[e]ld" that "state law barring subrogation and reimbursement" was in fact "overrid[den]," 581 U.S. at 91, meaning ordinary preemption applies to such laws. Further, *Nevils* entirely undermines the Second's Circuit's ordinary preemption analysis by adopting the broad interpretation of *Morales* the Second Circuit rejected in *Empire*. *Compare Empire*, 396 F.3d at 147–48, 157 (rejecting dissent's "broad" view of FEHBA preemption based on *Morales*)*, with Nevils*, 581 U.S. at 95–96 (following *Morales*'s holding that "the phrase 'relate to' in a preemption clause 'express[es] a broad pre-emptive purpose.'"). *Morales* relied on the broad "sweep of the 'relating to' language" to reject as "an utterly irrational loophole" the "notion" that such language does not encompass "the particularized application of a general statute." *Morales*, 504 U.S. at 386.

4

This Court "can decline to follow [Second Circuit] precedent if it concludes that an intervening Supreme Court decision has so clearly undermined [that] precedent that it will almost inevitably be overruled." *Packer v. Raging Capital Mgmt*, 105 F.4th 46, 54 n.36 (2024). If the Second Circuit's analysis of ordinary preemption in *Empire* retains any vitality, the Court should decline to follow it here. *See Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*, 749 F. Supp. 3d 456, 471 (S.D.N.Y. 2024) (acknowledging "the limitations of [the Second Circuit's *Empire*] holding" in light of *Nevils* and undertaking its own analysis of FEHBA preemption by reference to ERISA preemption).[1]

### D. FEHBA's Preemption Provision Applies to Laws of General Application

Plaintiffs argue that even if the Second Circuit's statements in *Empire* are not binding, this Court should follow them anyway. Opp. at 10-11. Aside from being inconsistent with *Nevils*, this argument fails for three reasons.

First, the Second Circuit based its analysis on its conclusion that extending FEHBA preemption to laws of general applicability would render the requirement that such laws "relate to health insurance or plans" superfluous, in that the requirement would always be met where a dispute involved a contract term relating to coverage or benefits. *See* 396 F.3d at 146. But as the court explained in *Mahajan v. Blue Cross Blue Shield Ass'n, No.*, 16-cv-6944, 2017 WL 4250514 (S.D.N.Y. Sept. 22, 2017), the second condition is needed to ensure that the preemptive contract term does not preempt "*all* state laws which would be an absurd result." *Mahajan*, 2017 WL 4250514, at *8. The first condition describes what does the preempting (contract terms relating to

---

[1] The analysis in *Emergency Physician Servs.* makes clear the court did not view itself as bound by *Empire*, as the ERISA preemption it concludes is analogous has long been understood to apply to laws of general applicability.

5

coverage or benefits) while the second condition describes what is preempted (state law relating to health insurance or plans).

Second, even under the Second Circuit's erroneous reading, the second condition for preemption would not be superfluous.  Rather, while the court suggested this second condition "would *likely* have no meaning," the court acknowledged it has a role where a state law would affect coverage or benefits without purporting to enforce or construe those terms.  *See* 396 F.3d at 146 (emphasis added).  Given that the canon against superfluousness is an interpretive guide not an absolute rule, *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013), any interpretation that gives some effect to the second provision renders the canon inapplicable.

Notably, Plaintiffs fail to cite a single case holding that *Empire* precludes preemption of laws of general application and ignore the litany of authority to the contrary.  *See* Def.'s Mem. (ECF No. 25) ("Mem.") at 12–13; *see also Inspire Malibu v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 16-5229, 2016 WL 5746337, at *8 n.2 (C.D. Cal. Sept. 30, 2016) (unjust enrichment claim preempted by FEHBA).

Finally, Plaintiffs argue that N.Y. Ins. Law § 4226 escapes preemption, despite expressly applying to "health insurance," *id*. § 4226(a), because it also applies to "life" and "accident" insurance.[2]  Opp. at 11.  This argument impermissibly rewrites 5 USC § 8902(m)(1), which preempts laws *related* to—not limited to—health insurance.  This argument also contravenes *Nevils*' command that the provision be broadly construed.  No case holds such a limitation applies to FEHBA's preemption provision.

---

[2] Plaintiffs attempt to analogize Insurance Law § 4226 to the rule held to be preempted in *Nevils*, asserting both are laws of general application.  Opp. at 11.  But unlike Missouri's anti-subrogation rule—which does not mention health insurance—Section 4226 specifically applies to "health insurance."

## II. PLAINTIFFS' CLAIMS ARE IMPLIEDLY PREEMPTED

Plaintiffs' claims interfere both with OPM's authority over FEHBA administrators and Congress' intent that FEHBA plans be administered uniformly nationwide. Mem. at 14-16. "Congress vested OPM with broad authority to regulate FEHBA health plans and it has promulgated regulations requiring that all FEHBA contracts include a provision prohibiting carriers from distributing marketing and informational materials that are untrue or misleading and allowing OPM to punish noncompliance." *Mahajan*, 2017 WL 4250514, at *11 (citing 5 U.S.C. § 8913(a); 48 C.F.R. § 1652.203-70).

Plaintiffs do not contest those points, but instead recite general implied preemption principles without applying them to FEHBA. Plaintiffs lean on a supposed "presumption" against preemption, Opp. at 12, but no such presumption applies in the FEHBA context given the federal interests at play. *See Bell v. Blue Cross & Blue Shield of Okla.*, 823 F.3d 1198, 1201–02 (8th Cir. 2016); *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1105–06 (10th Cir. 2015).

Plaintiffs critically fail to address *Helfrich*'s holding of implied preemption, instead focusing their attack on *Mahajan*'s implied preemption ruling by citing *Empire*. Opp. at 14–15. But again, *Empire* was about jurisdiction, not whether federal law displaced state law. *See Helfrich*, 804 F.3d at 1102. "On the issue of displacement of state law, [*Empire*], if anything, supports [the] conclusion" that federal law governs. *Id*. at 1103. *Empire* noted that "the OPM-BCBSA master contract could be described as 'federal in nature' because it is negotiated by a federal agency and concerns federal employees" and "also noted the federal interest in uniform treatment of federal employees." *Id*. (citing *Empire*, 547 U.S. at 686, 696)). Those factors led the courts in *Helfrich* and *Mahajan* to hold that state law was impliedly preempted. This Court should do the same.

7

### III. DISMISSAL IS WARRANTED BECAUSE PLAINTIFFS FAILED TO UTILIZE AVAILABLE ADMINISTRATIVE REMEDIES

Plaintiffs acknowledge that FEHBA's regulations require exhaustion of administrative remedies, but assert those remedies are inapplicable because "Plaintiffs are not seeking review of a denied health benefits claim" because "there were no claims to deny." Opp. at 15. This is untrue. Plaintiff Cavallero-Kearins alleges Anthem "[o]n numerous occasions" stated it had not received her requests for reimbursement, and complains that "the reimbursement from Anthem was a tiny fraction of her out-of-pocket costs." *Id*. ¶¶ 76, 80.

Further, the basic premise of Plaintiffs' argument—that exhaustion applies only if Plaintiffs actually submitted health benefit claims—is wrong. Taken to its logical conclusion, FEHBA enrollees could avoid the administrative process altogether by suing for health benefits instead of submitting health benefits claims. That would gut the requirement of administrative exhaustion. Plaintiffs accuse Anthem of being "callous" for suggesting they should have obtained care and then sought reimbursement, Opp. at 18, but that is what the Supreme Court has held health plan enrollees should do. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 211 (2004) (discussed in Mem. at 18). Plaintiffs' Opposition ignores other options, such as requesting a single-case agreement. *See* Mem. at 19. Plaintiffs also ignore that if a health plan's provider directory mistakenly lists a provider as in-network, under the No Surprises Act the plan cannot impose a cost-sharing amount that is higher than the amount that would have applied had the provider actually been in-network. 42 U.S.C. § 300gg-115(b). Thus, assuming the truth of their allegations, Plaintiffs could have used any provider listed in the directory (whether in-network or not), submitted a health benefits claim to Anthem, and appealed any attempt by Anthem to impose cost-sharing higher than what would have applied in-network.

Plaintiffs also fault Anthem for citing complete preemption cases, (Opp. at 19), but those cases are relevant to show that remedies exist under federal law. If a remedy exists, then an enrollee must use it and cannot "state[] his claim as a breach of state law" where it "really amounts to an alternative method of remedying a contractual breach" of the Plan terms. *See Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390, 396 (9th Cir. 2002), *opinion amended on denial of rehearing*, 319 F.3d 1078 (9th Cir. 2003).

## IV.     PLAINTIFFS CANNOT SUE AS THIRD-PARTY BENEFICIARIES

While Plaintiffs argue they are, in some sense, third-party beneficiaries of the OPM-BCBSA Contract, it is clear they are not *intended* third-party beneficiaries *with the right to sue* to enforce its terms. *See Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 763-69 (W.D.N.Y. 2017). Plaintiffs make no attempt to distinguish *Fero*.

Instead, Plaintiffs incorrectly assert that "Anthem's only argument is that Plaintiffs cannot meet a heightened standard for government contracts intended to benefit the general public." Opp. at 23. But the requirement that "the contract terms 'clearly evidence[] an intent to permit enforcement by the third party' in question" is applicable to all contracts. *See Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, N.A.*, 747 F.3d 44, 49 (2d Cir. 2014) (quoting *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009)). Although *Hillside Metro* involved a government contract, *Premium Mortgage Corporation* did not; *Hillside Metro* cites that proposition while discussing "general principles of contract law" and before addressing the added requirements for government contracts. 747 F.3d at 49 (citation omitted). Plaintiffs are thus wrong

9

to assert that the "Court need not reach this issue . . . if it concludes that the heightened standard" applicable to government contracts "is inapplicable here." Opp. at 25.[3]

Plaintiffs fail to identify the requisite contractual terms supporting their position. Instead, the contractual provisions evidence the intent that enrollees *not* have enforcement rights by repeatedly giving OPM authority over the matters at issue here, such as marketing and other Plan materials and literature and provider networks, *e.g.*, OPM-BCBSA Contract §§ 1.9(k), 1.10(a)(4), (b), 1.11, 1.12(a), 1.13(d), 1.14(c), (d), and by giving OPM authority to take action "to protect the interests of" enrollees. *E.g., id*. § 1.10(b), 1.12(a), 1.14(c).

Plaintiffs argue that the OPM-BCBSA Contract permits federal employees to sue as to "denials of health benefits," and this means they can sue Anthem over the breaches alleged in this case. Opp. at 24. But the contractual provision they cite requires that such a suit "be brought against OPM and not against the Carrier or the Carrier's subcontractors." OPM-BCBSA Contract § 2.8(g)(3). Thus, the contracting parties did not intend to allow member suits against Anthem. Separately, the OPM-BCBSA Contract contains no provisions allowing enrollees to sue for any other type of alleged breach. And to the extent Plaintiffs are suing for something other than a denial of health benefits, there is a clear negative inference that no right to sue exists. *Cf. Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006); *Russello v. United States*, 464 U.S. 16, 23 (1983).

Plaintiffs also try to graft ERISA's private right of action onto the OPM-BCBSA Contract, arguing that the requirement that Anthem "shall comply" with ERISA—which by its terms does not apply to government plans—provides a right of action. Opp. at 24-25. Yet nothing in the

---

[3] Plaintiffs' argument that the heightened showing required for government contracts does not apply because that showing applies only to contracts intended to benefit the public, and the OPM-BCBSA contract was intended to benefit only government employees (Opp. at 23), is unavailing. The cases insisting on a higher standard draw no such distinction (Mem. at 21-22) and the cases Plaintiffs cite, Opp. at 23, show no similarities to the OPM-BCBSA Contract.

provision requiring compliance with ERISA states that ERISA's private right of action is available to *members*. Nor does the only authority Plaintiffs cite—*SEC v. Govil*, 86 F.4th 89 (2d Cir. 2023)—suggest that reference to a statute's requirements in a *contract* makes statutory remedies available to a party (let alone a non-party).

Plaintiffs have failed to show they are an intended third-party beneficiary with a right to enforce the OPM-BCBSA Contract. *Fero*, 236 F. Supp. 3d at 768.

## V.     PLAINTIFFS CONCEDE THAT BENEFIT-OF-THE BARGAIN DAMAGES ARE UNAVAILABLE

Last, Plaintiffs argue this Court should not strike their request for benefit-of-the-bargain damages despite admitting that such damages are not available. (ECF No. 18 at 3). Plaintiffs contend the request to strike these damages is "procedurally improper" because damages are a form of relief, not properly subject to a motion to dismiss. (Opp. at 25). Plaintiffs are wrong. "Where a demand for damages is not recoverable as a matter of law, . . . it may be stricken." *Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12 CIV. 7908 PAE, 2013 WL 2631043, at *9 (S.D.N.Y. June 11, 2013), *reconsidered in part on other grounds*, 2013 WL 3892898 (S.D.N.Y. July 29, 2013).

Plaintiffs have conceded the filed-rate doctrine bars them from pursuing damages under a benefit-of-the-bargain theory. *See* ECF No. 18 at 3 ("Plaintiffs acknowledge, however, that they may not pursue 'benefit-of-the-bargain' damages for the reason stated by Anthem."). Even absent that concession, the filed-rate doctrine bars such damages as a matter of law. *See Fero*, 236 F. Supp. 3d at 780–81.

## CONCLUSION

For these reasons, Plaintiffs' Complaint should be dismissed with prejudice.[4]

---

[4] Plaintiffs claim Anthem waived a sovereign immunity defense. Opp. at 4 n.2. Although Anthem did not raise that argument in its motion, sovereign immunity is raised under Rule 12(b)(1) and is not waived if not included in a motion to dismiss. Fed. R. Civ. P. 12(h)(1), (3);

11

Dated: May 30, 2025                                 Respectfully Submitted,

*/s/ Matthew J. Aaronson*
Matthew J. Aaronson
TROUTMAN PEPPER LOCKE LLP
875 Third Avenue
New York, NY 10022
T: (212) 704-6000
matthew.aaronson@troutman.com

Adam P. Feinberg (admitted *pro hac vice*)
MILLER & CHEVALIER CHARTERED
900 16th Street NW
Washington, DC 20006
T: (202) 626-6087
afeinberg@milchev.com

*Attorneys for Defendant*
*Anthem HealthChoice Assurance, Inc.*

---

*Calingo v. Meridian Res. Co. LLC*, No. 7:11-cv-628, 2011 WL 3611319, at *11 (S.D.N.Y. Aug. 16, 2011).  Anthem reserves its right to raise sovereign immunity later.

12

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 2.B of the Court's Individual Rules and Practices in Civil Cases, I HEREBY CERTIFY that this motion complies with the Court's word-count limitations and contains 3,486 words, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

*/s/ Matthew J. Aaronson*
Matthew J. Aaronson

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by CM/ECF to all counsel of record on this 30th day of May 2025.

                                                        */s/ Matthew J. Aaronson*
                                                        Matthew J. Aaronson