UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                :

JANE DOE, *on behalf of Baby Doe, a minor*, and     :
PATRICIA CAVALLARO-KEARINS, *on behalf of*     :
*themselves and all others similarly situated*,     :
                                :
               Plaintiffs,             :
                                :
               -v-                   :       24 Civ. 8012 (JPC)
                                :
ANTHEM HEALTHCHOICE ASSURANCE, INC.,     :       OPINION AND ORDER
*doing business as* Anthem Blue Cross and Blue Shield  :
*and* Anthem Blue Cross,                 :
                                :
               Defendant.            :
                                :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiffs Jane Doe and Patricia Cavallaro-Kearins allege that Defendant Anthem
HealthChoice Assurance, Inc. ("Anthem") publishes inaccurate directories of mental-health
providers. Plaintiffs claim that Anthem's use of these directories, known as "ghost networks,"
violates New York State common and statutory law. But Plaintiffs' state-law claims are expressly
preempted by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901 *et seq.*
So the Court grants Anthem's motion to dismiss for failure to state a claim.

## I. Background

### A.      Facts[1]

Anthem is a health insurance company that offers plans to federal employees under the Federal Employees Health Benefits ("FEHB") Program.  Compl. ¶ 20.  One such employee is Plaintiff Patricia Cavallaro-Kearins, who has been a member of Anthem's Blue Cross Blue Shield Service Benefit Plan FEP Blue Standard Option ("Standard Option Plan") since January 1, 2019. *Id.* ¶¶ 19, 70.  Plaintiff Jane Doe is another; she and her daughter, Baby Doe, have been covered by the Standard Option Plan for over five years.  *Id.* ¶¶ 17-18, 85.

The Standard Option Plan stems from the statutory framework set forth by FEHBA. Through FEHBA, Congress has "authorized the Office of Personnel Management (OPM) to contract with private carriers for federal employees' health insurance."  *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 90 (2017) (citing 5 U.S.C. § 8902(a), (d)).  OPM has contracted with the Blue Cross and Blue Shield Association ("BCBSA") to create the Standard Option Plan, which Anthem administers in New York.  *See* Stuhan Decl., Exh. B ("OPM-BCBSA Contract") § 4.3; Compl. ¶¶ 21-22, 117.  As FEHBA provides, contracts "shall contain a detailed statement of benefits" approved by OPM, 5 U.S.C. §§ 8902(d), 8907, also known as a brochure, and under

---

[1] The facts contained in this section, which are assumed true solely for purposes of this Opinion and Order, are taken from Plaintiffs' Complaint, Dkt. 1 ("Compl."). *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor"). The Court also considers the contracts and statements of benefits attached to the Declaration of Brendan G. Stuhan, Dkt. 26 ("Stuhan Decl."), which are incorporated by reference into the Complaint, *see, e.g.*, Compl. ¶¶ 71, 117-118, 152-154, 228-232, 240, 253, 262-263, 269. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 502 (S.D.N.Y. 2018), *aff'd*, 772 F. App'x 4 (2d Cir. 2019). "Plaintiffs have no objection to this Court's considering, as incorporated by reference," those documents. Dkt. 29 ("Opposition") at 2 n.1.

the OPM-BCBSA Contract, carriers "shall provide the benefits as described in the agreed upon brochure text," OPM-BCBSA Contract § 2.2(a).  *See also Empire HealthChoice Assurance, Inc. v. McVeigh* ("*McVeigh II*"), 547 U.S. 677, 684 (2006) ("Each enrollee, as FEHBA directs, receives a statement of benefits conveying information about the Plan's coverage and conditions.").

The Statement of Benefits explains that under the Standard Option Plan, Anthem has contracted and set negotiated rates with certain providers.  Stuhan Decl., Exh. O ("2024 Statement of Benefits") at 12.  "[T]hese providers qualify as 'in-network' providers, accept lower payments from the insurer, and agree to charge members an agreed-upon discounted amount." Compl. ¶ 104. By contrast, "[m]embers who see providers not within Anthem's network—'out-of-network' providers—will be subjected to a variety of additional costs: some known, some unknown." *Id.* ¶ 107; *see* 2024 Statement of Benefits at 13 (warning that under the Standard Option Plan, one's "out-of-pocket costs may be substantially higher when" seeing out-of-network providers).  The Statement of Benefits also sets out the Standard Option Plan's coverage for different types of care, including mental-health care, along with the amounts the Plan will pay for in-network and out-of-network mental-health providers.  2024 Statement of Benefits at 93-97.  And the Statement of Benefits contains a link where enrollees can locate in-network mental-health providers.  *Id.* at 94; Compl. ¶ 71.

The OPM-BCBSA Contract—which creates the Standard Option Plan and incorporates the Statement of Benefits—includes several provisions concerning accuracy.  For instance, carriers must use the OPM-approved Statement of Benefits "verbatim," OPM-BCBSA Contract § 1.13(c), and agree that "any advertising material . . . shall be truthful and not misleading," *id.* § 1.14(a). Violations of the latter clause are subject to "[c]orrective action[s]" taken "by OPM" like calling for the carrier to "cease and desist" publishing the misleading material and to "issue corrections"

of the material.  *Id.* § 1.14(c)(1)-(2).  The contract also requires Anthem to comply with certain provisions of the No Suprises Act ("NSA"), Pub. L. 116-260, § 116, 134 Stat. 1182, 2878-89 (2020), under which it must ensure that a plan's provider-directory information is accurate.  OPM-BCBSA Contract § 2.18(a); Compl. ¶ 118; *see* 42 U.S.C. § 300gg-115(a).  To ensure accuracy, Anthem is obligated to update its directory every ninety days, remove providers whose directory information it is unable to verify, and update the directory within two days of receiving new information from a provider.  42 U.S.C. § 300gg-115(a)(2); *see* Compl. ¶¶ 118-121.  The NSA further specifies that if a provider directory inaccurately lists a provider as in-network, Anthem may only charge the enrollee the amount that it would have if the provider actually had been in-network.  42 U.S.C. § 300gg-115(b).

According to Plaintiffs, Anthem both keeps an inaccurate mental-health provider directory and gives consumers "deceptive and materially misleading marketing and program materials," which "promise mental health benefits and a robust network of in-network providers."  Compl. ¶¶ 126-128, 150-177.  Specifically, Plaintiffs allege that Anthem's directory lists providers who are not actually in-network or are not accepting new patients for outpatient mental-health services, and includes inaccurate information for those who are.  *Id.* ¶¶ 6, 126-128, 140-149.  Anthem, in other words, allegedly maintains a "ghost network."  *Id.* ¶¶ 1-2, 51-69 (describing ghost networks generally).  And because Anthem maintains a ghost network, Plaintiffs claim, the materials associated with the Standard Option Plan—including the Statement of Benefits—are "deceptive."  *Id.* ¶¶ 10, 152, 170.

Plaintiffs point to harm they have suffered from Anthem's ghost network.  Cavallaro-Kearins, for instance, sought a licensed provider to treat her ADHD and anxiety, but "could not find a single available, in-network provider using Anthem's online provider directory."  *Id.* ¶¶ 73-

74.  Because there were no in-network providers close by, Cavallaro-Kearins resorted to paying for an out-of-network psychiatrist, costing her thousands of dollars for which she has received minimal reimbursement from Anthem.  *Id.* ¶¶ 76-82.  As those costs were unsustainable, she stopped seeing that out-of-network psychiatrist, and only recently has found an in-network nurse practitioner—although in-network psychiatrists remain unavailable.  *Id.* ¶¶ 82-84.  The Does, for their part, have yet to find an in-network provider to treat Baby Doe's autism spectrum disorder, and because Jane Doe is unable to financially afford out-of-network treatment, Baby Doe has foregone care.  *Id.* ¶¶ 88-96.

**B.    Procedural History**

Plaintiffs filed suit against Anthem and a related entity[2] on October 22, 2024.  Dkt. 1.  The Complaint asserts six state-law causes of action: breach of contract by Anthem's failure to comply with various federal laws as required under the OPM-BCBSA Contract, Compl. ¶¶ 227-233; violation of the New York General Business Law ("GBL") Section 349, *id.* ¶¶ 234-246; violation of GBL Section 350, *id.* ¶¶ 247-259; violation of New York Insurance Law Section 4226, *id.* ¶¶ 260-266; fraudulent misrepresentation, *id.* ¶¶ 267-276; and unjust enrichment, *id.* ¶¶ 277-284. The Complaint also includes class-action allegations, as Plaintiffs bring this suit both individually and on behalf of a class.  *Id.* ¶¶ 216-226.  Among other things, the Complaint requests declaratory relief that Anthem's "actions violate federal law" (namely the NSA), injunctive relief prohibiting Anthem "from continuing to violate federal law," and damages.  *Id.* at 70-71.

On February 21, 2025, the Court set a briefing schedule on Anthem's anticipated motion to dismiss.  Dkt. 19.  Consistent with that briefing schedule, on March 28, 2025, Anthem moved

---

[2] Plaintiffs have since voluntarily dismissed their claims against the related entity, Anthem HP, LLC.  Dkt. 15.

to dismiss Plaintiffs' Complaint for failure to state a claim.  Dkt. 25 ("Motion"); Stuhan Decl.

After Anthem filed that motion, the parties jointly moved to stay discovery pending the motion's

resolution.  Dkt. 27.  The Court granted the joint motion and stayed discovery on April 3, 2025.

Dkt. 28.  Plaintiffs responded to the motion to dismiss on May 2, 2025.  Opposition.  Anthem

replied on May 30, 2025.  Dkt. 30 ("Reply").

## II.  Standard of Review

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.*  A complaint's "[f]actual allegations must be

enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although

a court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in

the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as

true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp.*, *PLLC*,

570 F.3d 471, 475-76 (2d Cir. 2009).

## III.  Discussion

Anthem argues that all of Plaintiffs' claims are expressly and implicitly preempted by

FEHBA, that all of Plaintiffs' claims must be dismissed because Plaintiffs have failed to exhaust

their administrative remedies, that Plaintiffs' breach-of-contract claim fails under third-party

beneficiary principles, and that Plaintiffs are not entitled to benefit-of-the-bargain damages should

any of their claims survive. Motion at 8-24. Because the Court agrees that FEHBA expressly preempts Plaintiffs' claims, it need not consider Anthem's other arguments.

Under the doctrine of preemption, Congress "may exercise its constitutionally delegated authority to set aside the laws of a State," meaning that "[w]hen federal law preempts nonfederal law, the Supremacy Clause requires courts to follow federal, not state, law." *Buono v. Tyco Fire Prods., LP*, 78 F.4th 490, 495 (2d Cir. 2023) (internal quotation marks omitted). There are generally "three forms" of preemption, one of which is "express preemption, where Congress has expressly preempted local law." *Id.* (citation omitted). When "a federal law contains an express preemption clause," courts "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent," the ultimate objective of the preemption inquiry. *Id.* (internal quotation marks omitted). While the existence of an express-preemption clause "does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains," neither is there "any presumption against preemption when a statute contains an express-preemption clause." *Id.* at 495-96 (citation modified).

FEHBA contains an express-preemption clause. Under that clause, "[t]he terms of any contract . . . which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law . . . which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1). As stated, Section 8902(m)(1) sets out two preemption requirements: (1) the dispute must implicate contractual terms "which relate to the nature, provision, or extent of coverage or benefits," and (2) the state law which those terms would preempt must "relate[] to health insurance or plans." *Nevils*, 581 U.S. at 94-95 (quoting 5 U.S.C. § 8902(m)(1)).

Plaintiffs do not contest that this dispute implicates contractual terms relating to the nature, provision, or extent of coverage or benefits.  *See* Opposition at 5 (arguing only that Plaintiffs' claims "do not satisfy the second preemption precondition").  Nor could they: the entire dispute centers on provisions of the OPM-BCBSA Contract and incorporated Statement of Benefits that implicate coverage for mental-health treatment and the benefits associated with that coverage. These provisions include the Statement of Benefits' description of mental-health coverage and benefits along with a link to in-network providers, 2024 Statement of Benefits at 93-97, and the contractual clauses concerning the accuracy of statements made about coverage and benefits, OPM-BCBSA Contract §§ 1.14 (governing materially misleading statements), 2.18(a) (incorporating the NSA).  The terms of the OPM-BCBSA Contract at issue thus "relate to the nature, provision, or extent of coverage or benefits." 5 U.S.C. § 8902(m)(1).

The parties vigorously contest, however, whether Plaintiffs' state-law claims relate to health insurance or plans.  Plaintiffs assert that "laws of general application—*i.e.*, laws that are not specific to the regulation of health insurance," like "generally applicable contract, tort, and consumer-protection law[s]"—"are not preempted by FEHBA."  Opposition at 4.  On Plaintiffs' reading of Section 8902(m)(1), only those state laws that "specifically" and exclusively relate to health insurance or plans are preempted.  *Id.* at 10-11.  Anthem, for its part, argues that "state laws of general application that do not reference health insurance or plans still trigger FEHBA's second requirement for preemption."  Motion at 12.  The Court agrees with Anthem: because even the generally applicable state-law claims at issue in this case "relate[] to health insurance or plans," 5 U.S.C. § 8902(m)(1), FEHBA expressly preempts those claims.

Plaintiffs' primary argument is that the Second Circuit has already held that generally applicable laws necessarily do not relate to health insurance or plans.  *See* Opposition at 4-10

(citing *Empire HealthChoice Assurance, Inc. v. McVeigh* ("*McVeigh I*"), 396 F.3d 136, 145-46 (2d Cir. 2005)).  In *McVeigh I*, the Second Circuit considered whether there was federal question jurisdiction under 28 U.S.C. § 1331 over an insurance company's claim that an enrollee had breached a subrogation and reimbursement provision in the statement of benefits.  396 F.3d at 138-40.  As the Second Circuit explained, "FEHBA does not provide a federal statutory cause of action for insurance carriers to vindicate their rights under FEHBA-authorized contracts," so federal question jurisdiction over the dispute existed "only if federal common law govern[ed] [the company's] claims."  *Id.* at 140.  The court held that federal common law did not govern the insurance company's claims because the company had "not demonstrated an actual, significant conflict between New York state law and the federal interests underlying FEHBA."  *Id.* at 140-42 (internal quotation marks omitted).  The court also rejected the argument that Section 8902(m)(1)—FEHBA's express-preemption provision—"authorizes by itself the exercise of federal jurisdiction," concluding that FEHBA does not "reveal[] a congressional objective to resolve all manner of breach of contract suits relating to the [insurance plan] in federal court."  *Id.* at 145-149.

The *McVeigh I* majority further discussed the meaning of Section 8902(m)(1).  Guided by a "presumption against federal preemption," it rejected the dissent's suggestion "that the phrase 'state or local law . . . which relates to health insurance or plans' encompasses laws of general application that make absolutely no reference to health insurance or plans but are used in a given case to construe or enforce FEHBA plans."  *Id.* at 145-46 (internal quotation marks omitted).  That was because such a reading would give an "excessively broad interpretation" to the phrase "relate to" and render Section 8902(m)(1)'s "second limiting condition" largely "meaningless."  *Id.* at 146-48.  The kind of state law that relates to health insurance or plans, the majority reasoned, is

one that "explicitly refers to or discusses health insurance or plans," like a "state health insurance law." *Id.* at 145 n.9 & 148 (citation modified). But "[w]ithout any showing that the dispute implicates a specific state law or state common-law principle 'relat[ing] to health insurance,' § 8902(m)(1) does not authorize federal preemption of state law *in this case*." *Id.* at 145 (emphasis added). And "even if" it did, that would be "insufficient to create federal jurisdiction," because the "well-pleaded complaint rule requires that the complaint itself arise under federal law in order for there to be jurisdiction," and the insurance company's claims arose "under state law," not federal common law. *Id.* at 150.

As the above indicates, this discussion about Section 8902(m)(1)'s meaning was not necessary to the Second Circuit concluding that federal question jurisdiction was lacking. In affirming *McVeigh I*, the Supreme Court confirmed as much. The Court first agreed with the Second Circuit's federal-common-law holding that the insurance company had "not demonstrated a significant conflict between an identifiable federal policy or interest and the operation of state law," so there was "no cause to displace state law, much less to lodge th[e] case in federal court." *McVeigh II*, 547 U.S. at 690-93 (citation modified). And the Court agreed with the Second Circuit that Section 8902(m)(1), "FEHBA's preemption prescription," was not "a jurisdiction-conferring provision." *Id.* at 697. Like the Second Circuit, the Court explained that "Section 8902(m)(1)'s text does not purport to render inoperative *any and all* state laws that in some way bear on federal employee-benefit plans." *Id.* at 698. "[I]f Congress intends a preemption instruction completely to displace ordinarily applicable state law, and to confer federal jurisdiction thereby, it may be expected to make that atypical intention clear," which it had "not done" with FEHBA. *Id.* But unlike the Second Circuit, the Court did not elaborate on whether state laws of general application could still relate to health insurance or plans, because "*even if FEHBA's preemption provision*

*reaches contract-based reimbursement claims*, that provision is not sufficiently broad to confer federal jurisdiction." *Id.* (emphasis added). So all the Court "extract[ed] from § 8902(m)(1)" was "no prescription for federal-court jurisdiction." *Id.* at 699.

It is without doubt that "the Supreme Court ha[d] not endorsed" in *McVeigh II* the Second Circuit's discussion of generally applicable state laws in *McVeigh I*. *Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*, 749 F. Supp. 3d 456, 471 (S.D.N.Y. 2024). Plaintiffs try to characterize the Second Circuit's language as an alternative holding that survives the Supreme Court's affirmance on other grounds. Opposition at 6-7 (citing *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 151 (2d Cir. 2015)). But this misses the point: a statement that is unnecessary to a court's conclusion that it lacks jurisdiction is necessarily *dictum*, not an "alternative holding." *Klein ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 227 & n.7 (2d Cir. 2018). Such observations, then, "do not bind the district court." *United States v. Giffen*, 473 F.3d 30, 44 (2d Cir. 2006). Indeed, Anthem correctly points out that "Plaintiffs fail to cite a single case holding that [*McVeigh I*] precludes preemption of laws of general application." Reply at 6. Courts in this Circuit, rather, have concluded that "the statements in *McVeigh I* regarding the scope of FEHBA preemption are *dicta* and do not control the Court's analysis." *Mahajan v. Blue Cross Blue Shield Ass'n*, No. 16 Civ. 6944 (PKC), 2017 WL 4250514, at *8 (S.D.N.Y. Sept. 22, 2017); *see Calingo v. Meridian Res. Co.*, No. 11 Civ. 628 (VB), 2011 WL 3611319, at *9 (S.D.N.Y. Aug. 16, 2011) (deeming as "*dicta*" *McVeigh I*'s statements "addressed to the second prong of the preemption analysis—whether the state law relates to health insurance"); *Emergency Physician Servs. of N.Y.*, 749 F. Supp. 3d at 471 (similar); *see also Liberty Wellness Chiropractic v. Empire HealthChoice HMO, Inc.*, No. 21 Civ. 2132 (CM), 2023 WL 1927828, at *8-9 (S.D.N.Y.

11

Feb. 10, 2023) (collecting post-*McVeigh* cases holding that generally applicable state-law claims are preempted by FEHBA). This Court agrees that it is not bound by *McVeigh I* on this question.

Of course, that *McVeigh I*'s treatment of Section 8902(m)(1)'s second prong is *dicta* does not give the Court "license to cavalierly disregard it." *Imhof v. N.Y.C. Hous. Auth.*, 792 F. Supp. 3d 501, 511 (S.D.N.Y. 2025) (internal quotation marks omitted). Yet while "Second Circuit *dictum* warrants substantial deference from this Court," here, there are "compelling argument[s]" to depart from *McVeigh I. Id.* at 511-12 (internal quotation marks omitted).

Most notably, intervening Supreme Court caselaw has cast considerable doubt on the Second Circuit's *dicta*.[3] In *Coventry Health Care of Missouri, Inc. v. Nevils*, the Supreme Court considered whether "FEHBA's express-preemption prescription, § 8902(m)(1), override[s] state law prohibiting subrogation and reimbursement." 581 U.S. at 90-91. The Court explained that this was not the "discrete question" it had considered in *McVeigh II*: "whether 28 U.S.C. § 1331 gives federal courts subject-matter jurisdiction over FEHBA reimbursement actions." *Id.* at 97. As the Supreme Court recounted, in rejecting the assertion "that § 8902(m)(1) itself conferred federal jurisdiction," the *McVeigh II* Court "had no cause to consider § 8902(m)(1)'s text, context, and purpose," because "even if FEHBA's preemption provision reaches contract-based reimbursement claims," that "answer made no difference to the question there presented." *Id.* (citation modified).

---

[3] Because *McVeigh I* did not "unequivocally h[o]ld" that Section 8902(m)(1) fails to reach state laws of general application, Plaintiffs' reliance on the Second Circuit's instruction that "a District Court must follow controlling precedent—even precedent the District Court believes may eventually be overturned—" is inapposite. *Packer ex rel. 1-800 Flowers.com, Inc. v. Raging Cap. Mgmt., LLC*, 105 F.4th 46, 50, 53 (2d Cir. 2024) (internal quotation marks omitted); *see* Opposition at 9-10.

Considering Section 8902(m)(1)'s text, context, and purpose, the *Nevils* Court undercut the Second Circuit's *McVeigh I* language in at least three ways. First, unlike the Second Circuit, the Supreme Court declined to "apply a presumption against preemption" to Section 8902(m)(1). *Compare Nevils*, 581 U.S. at 97, *with McVeigh I*, 396 F.3d at 145 (invoking "the presumption against federal preemption that should guide our analysis in this case"). Second, the state-law prohibition against subrogation and reimbursement at issue in *Nevils* "had nothing in particular to do" with health insurance or plans. *Mahajan*, 2017 WL 4250514, at *8. While Plaintiffs correctly point out that the Supreme Court did not expressly "assess the second preemption requirement in light of the parties' agreement that it was satisfied," Opposition at 9; *see Nevils*, 581 U.S. at 94-95, that widespread assumption remains "[a]nother clue that the state law at issue need not relate specifically to health insurance or plans," *Mahajan*, 2017 WL 4250514, at *8. *See also Ray v. Tabriz*, No. 23-cv-1467, 2025 WL 306175, at *2 (N.D. Ill. Jan. 27, 2025) (concluding "post-*Nevils*" that "even a generally applicable law can 'relate to health insurance or plans' in a case like this one where it is being used to limit a health insurer's reimbursement"). Third, and most importantly, the *Nevils* Court adopted the broad reading of the "expansive phrase 'relate to,'" *Nevils*, 581 U.S. at 95, that the Second Circuit rejected in *McVeigh I*. *Compare id.* at 95-96 ("We have 'repeatedly recognized' that the phrase 'relate to' in a preemption clause 'express[es] a broad pre-emptive purpose.'" (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992))), *with McVeigh I*, 396 F.3d at 147-48 (rejecting an "excessively broad interpretation" of Section 8902(m)(1) because the "many Supreme Court and Second Circuit cases constru[ing] the term 'relates to' quite broadly" did "not involve FEHBA"). Since "Congress characteristically employs the phrase to reach any subject that has 'a connection with, or reference to,' the topics the statute enumerates," the *Nevils* Court dismissed the argument "that Congress intended to preempt

*only* state coverage requirements," as opposed to subrogation-and-reimbursement requirements. 581 U.S. at 96 (quoting *Morales*, 504 U.S. at 384) (emphasis added).

As other courts have recognized, that adoption both neutralizes *McVeigh I* and explains in the first instance why laws of general application are not categorically excluded from Section 8902(m)(1)'s preemptive reach.  For example, the Honorable P. Kevin Castel has explained post-*Nevils* that "[t]here is nothing in the text of section 8902(m)(1) that limits its application to state laws that specifically, explicitly or expressly relate to health insurance or plans."  *Mahajan*, 2017 WL 4250514, at *8.  Rather, "[s]tate laws of general application, including common law principles, can directly and significantly impact health insurance plans."  *Id.*  The Fifth Circuit agrees: while that court acknowledged that common-law tort and contract claims "do not specifically relate to health insurance, . . . preemption reaches even a state's general laws when their *application* relates to the scope or administration of federal healthcare plans."  *Gonzalez v. Blue Cross Blue Shield Ass'n*, 62 F.4th 891, 904 (5th Cir. 2023).  That is because *Morales*—the same case the Supreme Court relied on in *Nevils* to describe FEHBA's "broad pre-emptive purpose," 581 U.S. at 95-96— "squarely rejected the notion that 'laws of general applicability' escape the broad 'sweep of the "relating to" language.'" *Gonzalez*, 82 F.4th at 904 (quoting *Morales*, 504 U.S. at 386).  And for the exact same reasons, the Sixth Circuit recently rejected the "suggest[ion] that FEHBA does not preempt state laws of general application," albeit in the related-but-distinct context of federal officer removal.  *Ohio ex rel. Yost v. Ascent Health Servs., LLC,* 165 F.4th 999, 1012 (6th Cir. 2026).

All that is left, then, is Plaintiffs' backup argument that "even if this Court considered the matter afresh, the Second Circuit was clearly correct that only its reading gives 'independent meaning' to the second condition for FEHBA preemption."  Opposition at 10-11 (quoting *McVeigh*

*I*, 396 F.3d at 146).  Put differently, Plaintiffs are of the view that under Anthem's reading of the phrase "relates to health insurance or plans," if that phrase were "stricken" from Section 8902(m)(1), "the statute would already preempt state or local laws 'that relate to the nature, provision, or extent of coverage or benefits' provided to federal employees under FEHBA contracts."  *Id.* at 10 (quoting 5 U.S.C. § 8902(m)(1)).  But even in *McVeigh I*, the majority recognized that "the second condition might have independent meaning in a dispute that (1) centers on contract terms specifically relating to health coverage but (2) does not involve the enforcement or construction of those contract terms."  396 F.3d at 146.  That is evident from Section 8902(m)(1)'s plain meaning: the statute does not "preempt[] *all* state laws," but only those that "relate[] to health insurance or plans."  *Mahajan*, 2017 WL 4250514, at *8 ("The phrase 'relates to health insurance or plans' limits the scope of preemption.").  As Anthem puts it, "[t]he first condition describes what does the preempting (contract terms relating to coverage or benefits) while the second condition describes what is preempted (state law relating to health insurance or plans)."  Reply at 5-6.  So even where a case implicates contract terms relating to coverage or benefits, those terms preempt only state laws that relate to health insurance or plans.  *See McVeigh I*, 396 F.3d at 158 (Raggi, J., dissenting) ("[W]here general state or local law affects FEHBA coverage or benefits only tangentially, without attempting to construe or enforce those plan terms, preemption may not be warranted.").

Nor is it so "difficult . . . to imagine such a case."  *Contra id.* at 146 (majority op.).  For instance, the Ninth Circuit has held that state-law medical malpractice claims do not relate to health insurance or plans even if the plaintiff's claim "referenc[es] the existence of a benefit plan."  *Roach v. Mail Handlers Benefit Plan*, 298 F.3d 847, 849-51 (9th Cir. 2002) (distinguishing "between claims based on a denial of benefits, which are preempted, and claims based on medical

malpractice, which are not"). To be sure, these cases are likely the exception and not the rule. But while those cases may indeed be rare, such rarity is consistent with Section 8902(m)(1)'s "statutory context and purpose." *Nevils*, 581 U.S. at 96. "FEHBA concerns benefits from a federal health insurance plan for federal employees that arise from a federal law in an area with a long history of federal involvement," and there are "[s]trong and distinctly federal interests . . . in uniform administration of the program, free from state interference, particularly in regard to coverage, benefits, and payments." *Id.* (citation modified). Indeed, "one of Congress' stated goals for FEHBA and the preemption provision in particular[] was to ensure the uniform administration of FEHBA benefit plans across the country." *Mahajan*, 2017 WL 4250514, at *9. So there is nothing incongruous about Section 8902(m)(1) "displac[ing]" state law—"whether consistent or inconsistent with federal plan provisions"—in most cases. *McVeigh II*, 547 U.S. at 686.

All told, in this Circuit there is no categorical rule preventing state laws of general application from relating to health insurance or plans under FEHBA. *See, e.g.*, *Mahajan*, 2017 WL 4250514, at *7-9; *Liberty Wellness Chiropractic*, 2023 WL 1927828, at *8-9; *Emergency Physician Servs. of N.Y.*, 749 F. Supp. 3d at 471-72; *see also Gonzalez*, 62 F.4th at 904-05; *Ascent Health Servs.*, 165 F.4th at 1012; *Ray*, 2025 WL 306175, at *2. Instead, "preemption reaches even a state's general laws when their *application* relates to the scope or administration of federal healthcare plans." *Gonzalez*, 62 F.4th at 904; *see Mahajan*, 2017 WL 4250514, at *8 ("State laws of general application, including common law principles, can directly and significantly impact health insurance plans.").

With the proper understanding of Section 8902(m)(1) in mind, the Court finds that each of Plaintiffs' state-law claims "relates to health insurance or plans." 5 U.S.C. § 8902(m)(1). Start with the most obvious: Plaintiffs' fourth cause of action, for a violation of New York Insurance

Law Section 4226.  Compl. ¶¶ 260-266.  That statute prohibits an "insurer . . . in . . . the business of life, or accident *and health insurance*" from "misrepresenting the terms, benefits, or advantages of any of its policies or contracts."  N.Y. Ins. L. § 4226(a)(1) (emphasis added).  Such a claim expressly relates to health insurance and plans.

Plaintiffs' other claims just as clearly—if not expressly—relate.  *See Mahajan*, 2017 WL 4250514, at *8 ("There is nothing in the text of section 8902(m)(1) that limits its application to state laws that specifically, explicitly or expressly relate to health insurance or plans.").  Indeed, this case is all but identical to *Mahajan*.  There, the plaintiff alleged that the insurance carrier "misrepresented the scope of its preferred provider network and the availability of in-network certified lactation consultants[,] inducing her to enroll in defendant's health benefits plan and suffer damages."  *Id.* at *1.  Based on the "defendant's alleged misrepresentations regarding the availability of in-network lactation consultants and the payments required for those services," the plaintiff asserted claims for "deceptive business practices and misrepresentations in violation of" GBL Sections 349 and 350, along with common-law fraud—just as Plaintiffs do here.  *Compare id.* at *5, *with* Compl. ¶¶ 234-246 (GBL Section 349), 247-259 (GBL Section 350), 267-276 (fraudulent misrepresentation).  Judge Castel concluded that "[a]s applied [t]here," New York "common law and consumer fraud statutes ha[d] a direct and significant impact on FEHBA benefit plans and their administration in that they seek to regulate the disclosures made about those plans." *Mahajan*, 2017 WL 4250514, at *9.  So too here.  *See, e.g.*, Compl. ¶ 242 ("Omitted and concealed from the representations were material and relevant facts that Plaintiffs and Class members would have used in selecting their health insurance plan.").  And while Plaintiffs here raise breach-of-contract and unjust-enrichment claims not raised in *Mahajan*, the same is true of those claims.  *See id.* ¶¶ 232 (alleging that Anthem violated federal laws, including the NSA, "and, by extension, its

contractual obligations to Plaintiffs and the Class" by "failing to consistently provide an accurate network directory and failing to ensure mental health network adequacy"), 278 (alleging that Anthem "has been and continues to be significantly and unjustly enriched because of its inaccurate and inadequate mental health provider network that violates federal law").[4]  The Court thus follows Judge Castel's well-reasoned conclusion that the "state common law principles and consumer protection statutes invoked by [Plaintiffs] sufficiently relate to health insurance or plans to trigger preemption."  *Mahajan*, 2017 WL 4250514, at *9 (citation modified).

\* \* \*

The Court appreciates Plaintiffs' frustration with ghost networks, a frustration that their Complaint suggests is shared by Congress and state authorities.  *See* Compl. ¶¶ 36-63.  But "under the statutory and regulatory regime" that this Court is "bound to apply, no relief is available." *Gonzalez*, 62 F.4th at 905.  Because Plaintiffs' claims are all "expressly preempted" by FEHBA, they "must be dismissed."  *Mahajan*, 2017 WL 4250514, at *9.

---

[4] In *Emergency Physician Services of New York*, the Honorable John G. Koeltl held that the plaintiffs' unjust-enrichment claim was not expressly preempted under FEHBA or the Employee Retirement Income Security Act of 1974, whose preemption clause also "use[s] the phrase 'relate to,'" because the claim did not reference a plan and did not have an impermissible connection to a plan, but rather "would 'merely increase costs'" if successful.  749 F. Supp. 3d at 470-72 (quoting *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 88 (2020)).  Plaintiffs make no such argument here.  Indeed, they make no effort to argue that, absent a categorical rule against generally applicable laws, their claims are nevertheless unrelated to health insurance or plans.

## IV.  Conclusion

For the above reasons, the Court grants Anthem's motion to dismiss Plaintiffs' claims with prejudice.  The Clerk of Court is respectfully directed to enter judgment in Anthem's favor and to close this case.

SO ORDERED.

Dated: March 2, 2026
     New York, New York

                                      JOHN P. CRONAN
                              United States District Judge

19